**EDDY'S TOYOTA OF WICHITA, INC., Plaintiff,**

v.

**KMART CORPORATION, Defendant.**

**Civil Action No. 95–1078–MLB.**

United States District Court, D. Kansas.

June 17, 1996.

Mark G. Ayesh, Ayesh Law Offices, Wichita, KS, for plaintiff.

John T. Steere, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, Richard I. Stephenson, RAGE Administrative & Marketing Services, Inc., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Kmart Corporation's motion for summary judgment. (Doc. 17). Plaintiff has responded, (Doc. 21), defendant has replied, (Doc. 22), and the court is prepared to rule.

### Undisputed Facts

Kmart Corporation ("Kmart") leases a building and property from West Wichita, a Pennsylvania limited partnership, in Wichita, Kansas. (Doc. 18, Uncontroverted Facts at ¶¶ 1–2). West Wichita's general partner is Brandywine Corporation ("Brandywine"). (Doc. 18, Uncontroverted Fact at ¶3). Kmart owns no interest in Brandywine, any affiliate of Brandywine, West Wichita or any of the Brandywine limited partnerships. (Doc. 18, Uncontroverted Fact at ¶ 15). Brandywine is only one of a large number of commercial real estate companies from whom Kmart leases property. (Doc. 18, Uncontroverted Fact at ¶ 27).

In May 1987, Eddy's Toyota of Wichita, Inc. ("Eddy's") entered into a sublease with West Wichita for property located diagonally in front of Kmart's store. (Doc. 18, Uncontroverted Fact at ¶4). Eddy's originally used the property as a car dealership. (Doc. 18, Uncontroverted Fact at ¶ 5). In January 1993, Eddy's subleased the property to Atlantic Video, doing business under the name of Zigefields ("Zigefields"). Zigefields intended to use the property for an adult bookstore. (Doc. 18, Uncontroverted Fact at ¶ 6).

Plaintiff alleges that protest letters were sent to Mike Steven, Eddy's owner, by Kmart's customers and employees at Kmart's request. (Doc. 18, Uncontroverted Fact at ¶ 20). The letters are undated. One states:

> We, the employees of surrounding businesses, want you to know we are appalled at learning that you, Mr. Steven, a well-known and respected businessman of this community, would sub-lease property to be used as an Adult Book and Video Store in the immediate jurisdiction (area) of businesses that cater to mainly families.

We urge and encourage you to reconsider the leasing of this property. Again, this property caters to mainly families and people of all ages, and we feel this is an inappropriate location for a "business" of this type. All of us are active members of our community, i.e., parents, church members, organization members; and we will not hesitate to let each and every person we know who is responsible for the leasing of this building and that that person is you, Mr. Steven.

We urge you to reconsider your options. Your reputation is undoubtedly on the line.

(Doc. 18, Uncontroverted Fact at ¶ 11).

The second letter sent to Mike Steven reads as follows:

I understand that you are considering the leasing of your property at 4200 W. Kellogg, Wichita, Kansas to an Adult Book and Video Store. As an actively participating consumer, a concerned citizen and parent, and an active church member, I would strongly urge you to reconsider this proposal. I urge you to think about the ramifications this step could make in your standing in the Wichita community.

As a businessman in this community, I know that you are aware that one pleased customer may tell three (3) friends about your product (business), but it is a known fact that one displeased customer will tell twenty-five (25) people about your product. A good reputation in the business community and a high standing in the local community is hard to come by in today's world, do you really want to be known as a person who leased their property to an Adult Book and Video Store?

In closing I would like to remind you that this property is located in a family oriented area of businesses. Do you really want your reputation and fine family name associated with advocating an Adult Book and Video Store?

(Doc. 18, Uncontroverted Fact at ¶ 11).

The only statement in these letters that plaintiff alleges to be untrue is, "the statements in the letter to the effect that the reputation of Mr. Steven and his organizations will be ruined if the property were leased to Atlantic Video...." (Doc. 18, Uncontroverted Fact at ¶ 22).

On April 29, 1993, West Wichita, through its agent Brandywine, wrote Eddy's, advising that its sublease to Zigefields violated Eddy's lease with West Wichita. (Doc. 18, Uncontroverted Fact at ¶ 7). On June 9, 1993, West Wichita filed suit in Sedgwick County District Court ("West Wichita lawsuit") seeking a temporary and permanent injunction against Eddy's and Zigefields. West Wichita alleged that Eddy's sublease to Zigefields violated Eddy's lease with West Wichita. (Doc. 18, Uncontroverted Fact at ¶ 10).

On June 9, 1993, the state court denied West Wichita's motion for a temporary restraining order. (Doc. 18, Uncontroverted Fact at ¶ 11). On July 20, 1993, the state court ruled that Eddy's sublease to Zigefields was not in violation of its lease from West Wichita and denied the request for a permanent injunction. West Wichita did not appeal the state court ruling. (Doc. 18, Uncontroverted Facts at ¶¶ 13–14).

January 12, 1995, Eddy's filed this action against Kmart in the Kansas Sedgwick County District Court alleging tortious interference with its sublease with Zigefields. (Doc. 1, Ex. A). Eddy's claimed that its employees were required to spend time defending the lawsuit and investigating the claims asserted by West Wichita; that it incurred attorney's fees defending the lawsuit and that it lost four months of rent from Zigefields because of the lawsuit. (Doc. 19, Ex. 9 at 5). Kmart removed the case to this court under 28 U.S.C. 1446(b) on February 13, 1995. (Doc. 1). This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

*Discussion*

In a case in which jurisdiction is founded on diversity, the court applies the law of the forum state. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir.1995). Both parties cite to Kansas law in their memoranda.

■ Kansas law recognizes that one who, without justification, induces or causes a breach of a contract to which it is not a party will be answerable for damages caused thereby. *DP–Tek, Inc. v. AT & T Global Infor-*

*mation Co.,* 891 F.Supp. 1510, 1516 (D.Kan. 1995) (citing Kansas law). The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages. *Id.*

Plaintiff claims Kmart tortiously interfered with Eddy's sublease with Zigefields, causing Zigefields to cease paying rent for a period of four months. Plaintiff contends in interrogatory answers that Kmart "wrongfully orchestrated surrounding businesses to protest the lease between plaintiff and Atlantic Video" and "wrongfully orchestrated a letter campaign from Kmart employees and customers calculated to threaten and coerce plaintiff into breaching its contract with Atlantic video or else suffer the consequences of publicity calculated to ruin the reputation of plaintiff." (Doc. 18, Uncontroverted Fact at ¶ 19). Plaintiff also alleges that Kmart is vicariously liable for West Wichita's actions in filing and prosecuting the West Wichita lawsuit because Brandywine, West Wichita's general partner, is Kmart's agent. (Doc. 18, Uncontroverted Fact at ¶ 16).

Kmart moves for summary judgment on the grounds that: 1) there is no evidence that West Wichita or Brandywine was acting as Kmart's agent in filing the West Wichita lawsuit, 2) the letters sent to Mike Steven are protected by the First Amendment, and 3) the statute of limitations bars plaintiff's claim.

### A. Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir.1991). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir. 1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

Applying these standards, the court perceives a major flaw in Eddy's response to Kmart's motion which would justify granting the motion for reasons other than those discussed herein.

██ Eddy's correctly cites *V.C. Video, Inc. v. Nat'l Video, Inc.,* 755 F.Supp. 962, 970

(D.Kan.1990), as stating the elements of tortious interference with contract. One of the elements is an intentional act which induced a third party to breach the contract. *See also* PIK 2d 18.90. Eddy's petition does not allege that Zigefields breached a contract with Eddy's and there is nothing in Eddy's summary judgment response which supplied any evidence that such a breach occurred. Rather, Eddy's merely alleges in its response that because of Kmart's "interference," Zigefields did not timely complete its renovation of the building and ceased making rent payments for four months. Eddy's relies on the affidavit of Kmart's operation manager and controller, Harold Johnson, to support this allegation but Johnson's affidavit is silent on the point. (Doc. 21, Ex. A). Thus, Eddy's has failed to make an evidentiary showing of an essential element of its case: a breach of contract by Zigefields.

Notwithstanding this deficiency, the court will decide the motion on the issues raised in the motion papers.

### B. *Agency Relationship*

■ Kmart moves for summary judgment on the grounds that there is no evidence that West Wichita or Brandywine acted as its agent in filing the West Wichita lawsuit against Eddy's. The court finds plaintiff has presented sufficient evidence to defeat summary judgment on this issue. Harold Johnson stated in his affidavit that during settlement discussions with Brandywine concerning the West Wichita lawsuit, Brandywine's representative telephoned Kmart several times for direction and counselling. (Doc. 21, Ex. A at ¶ 7). In a letter from Brandywine to Kmart, Brandywine expressed its belief that it could buy out Eddy's lease with Zigefields for $250,000, but that it needed Kmart's commitment to fund the settlement. Kmart characterizes this as "simply request[ing] Kmart's contribution to a buyout of the offending lease," (Doc. 22 at 6), but the letter states that Brandywine would not proceed unless Kmart committed to $250,000—the entire amount of the proposed settlement. This raises the inference that although Brandywine was negotiating, Kmart was the real party in interest. The court accordingly will consider Brandywine as Kmart's agent regarding the West Wichita lawsuit for the purposes of the remainder of Kmart's summary judgment motion.

### C. *Letters*

Kmart argues that the letters sent to Mike Steven are protected by the First Amendment and cannot be the basis for a tortious interference claim. (Doc. 18 at 21–24). Eddy's concedes the validity of this argument by failing to respond to it. (Doc. 21). Nevertheless, the court will discuss the issue. The court assumes for the purposes of the summary judgment motion that Kmart was responsible for organizing the formation and delivery of the letters.

First, regardless of whether the letters are protected by free speech, the letters were sent to *Eddy's Toyota*, not Zigefields. It is not alleged that Zigefields knew about the letters or that they affected Zigefields' decision to pay rent. There is no evidence to support Eddy's claim that the letters caused *Zigefields* to act differently concerning the sublease.

■ Having noted that, the court agrees with defendant that the letters in this circumstance are protected free speech and cannot form a basis for plaintiff's tortious interference claim. Expressions of opinion and peaceful means of protest are protected from actions alleging interference with business. *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). Corporations, such as Kmart, are provided First Amendment protection. The "inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual." *McIntyre v. Ohio Elections Comm'n*, — U.S. —, —, 115 S.Ct. 1511, 1522, 131 L.Ed.2d 426 (1995) (citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 1416, 55 L.Ed.2d 707 (1978)).

■ Here, the authors of the letters objected to an adult book and video store adjacent to where they shopped and worked. The letters reflect only the opinions of the

authors. Although plaintiff disagrees with the letters' position that Mike Steven's reputation would be affected by the sublease, the court finds that "Your reputation is undoubtedly on the line," "I urge you to think about the ramifications this step could make in your standing in the Wichita community," and "... do you really want to be known as a person who leased their property to an Adult Book and Video Store?" are not factual statements but rather protected expressions of opinion. Plaintiff does not allege that the letters were secured by improper or coercive means or that there were any untrue statements of fact contained in the letters other than the ones just discussed. That the letters threatened to publicize Mike Steven's participation in the sublease to Zigefields does not affect the nature of the expressions. Speech does not lose its protected character simply because it may coerce others into action. *Claiborne Hardware*, 458 U.S. at 910, 102 S.Ct. at 3424.

In *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), the petitioners distributed leaflets critical of the respondent's business practices in hope that the respondent would be induced to action by letting "[the respondent's] neighbors know what he was doing to us." *Id.* at 417, 91 S.Ct. at 1577. The lower courts enjoined the petitioners from distributing their leaflets on the ground that the leaflets were coercive and intimidating, rather than informative. The United States Supreme Court reversed:

> ... the Appellate court was apparently of the view that petitioners' purpose in distributing their literature was not to inform the public, but to "force" respondent to sign a no-solicitation agreement. The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment.

*Id.* at 419, 91 S.Ct. at 1577–78.

In sum, Kmart and its employees and shoppers were not required to suppress their disapproval of a sublease introducing a pornographic store into their business neighborhood. The court accordingly grants defendant's motion for summary judgment regarding the letters.

## D. West Wichita Lawsuit

The remainder of plaintiff's claim for tortious interference is based on the allegation that Kmart directed its agent, Brandywine, to file a meritless lawsuit against Eddy's. (Doc. 21 at 4, ¶ 19). Defendant moves for summary judgment asserting that the gravamen of plaintiff's claim is therefore malicious prosecution, not tortious interference. (Doc. 18 at 14). Because the one year statute of limitations has expired for a malicious prosecution claim, *see* K.S.A. 60–514, defendant argues plaintiff's claim of tortious interference, based solely on the allegation of a malicious lawsuit, is also barred by the statute of limitations. (Doc. 18 at 15).[1]

The court agrees. Tortious interference with a contract is predicated on malicious conduct by the defendant. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 169, 872 P.2d 252 (1994). Not all interference with contractual relations is tortious and a person may be privileged or justified to interfere. *Id.*

■ Efforts to seek remedies through the judicial process are protected by the First Amendment right to petition the government for redress of grievances. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Even if Eddy's ultimately could prove that West Wichita and/or Brandywine acted as Kmart's agent in bringing the state court lawsuit, Kmart's redress to the courts to resolve its contractual dispute with Eddy's is privileged even if it interfered with Eddy's lease, unless Kmart maliciously filed the lawsuit. Thus, the only method by which

---

1. West Wichita, through Brandywine, filed its injunction action against Eddy's June 9, 1993. Eddy's filed this case against Kmart in January 1995, over a year and a half later.

Plaintiff does not dispute that if the one year limitations period for malicious prosecution applies, its action is untimely. (*See* Doc. 21). The court assumes, and the parties appear to assume, that K.S.A. 60–513's two year limitations period would apply to a tortious interference claim.

Eddy's can establish tortious interference is by proving malicious prosecution, which is barred by the statute of limitations.

Although Kansas has not specifically addressed this issue, Judge O'Connor of this court did not allow a plaintiff to characterize an untimely claim for business libel as an "unfair competition" claim which was governed by a longer limitations period, and dismissed the claim. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 723 F.Supp. 567, 569 (D.Kan.1989).

Other jurisdictions have squarely held that the alleged malicious filing of a lawsuit may not be the basis for a tortious interference claim because to do so would avoid the policy considerations underlying the distinct limitations periods. *See Phillips v. MacDougald,* 219 Ga.App. 152, 464 S.E.2d 390 (1995); *Jacobsen v. Garzo,* 149 Vt. 205, 542 A.2d 265 (1988). Courts have also held that an expired claim for defamation cannot form the basis for a tortious interference claim for the same reason. *See Evans v. Philadelphia Newspapers, Inc.,* 411 Pa.Super. 244, 601 A.2d 330 (1991); *Laird v. Texaco,* 722 S.W.2d 519 (Tex.Ct.App.1986); *Rutherford v. Johnson,* 250 Cal.App.2d 316, 58 Cal.Rptr 546 (1967); *Kamen v. United Press Int'l, Inc.,* 33 Misc.2d 903, 227 N.Y.S.2d 776 (1962).

The court concludes that because Eddy's case rests solely on the allegation that Kmart caused its agent to file a baseless lawsuit, Eddy's cannot avoid the one-year statute of limitations for malicious prosecution.

IT IS ACCORDINGLY ORDERED that defendant's motion for summary judgment (Doc. 17) is GRANTED.

A motion for reconsideration is not encouraged. Should such a motion be filed, it shall strictly comply with the standards set forth in *Comeau v. Rupp,* 810 F.Supp. 1172 (D.Kan.1992), and shall be limited to 3 pages. A response shall be similarly limited and shall be filed within 10 days of the filing of any motion for reconsideration. No reply shall be filed.