**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD K. TAYLOR,

      Plaintiff-Appellant,

v.

DEREK S. CASEY and HUTTON &
HUTTON,

      Defendants-Appellees.

No. 02-3138
(D.C. No. 00-CV-1448-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

Plaintiff Richard K. Taylor appeals the district court's orders granting summary

judgment in favor of Defendants Derek S. Casey and the law firm for which Casey works,

Hutton & Hutton (hereinafter "Casey"). Casey represented Taylor in a defamation and

tortious interference lawsuit. Although a jury awarded Taylor damages at trial, the

Kansas Court of Appeals reversed the verdict after finding the lawsuit was filed beyond

the one-year statute of limitations, and was not preserved by the Kansas savings statute.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Taylor then sued Casey, alleging Casey (1) negligently failed to file a "substantially similar" lawsuit protected by the savings statute, and (2) negligently filed a federal lawsuit that had no hope of success, thereby depriving Taylor of the benefit of the Kansas savings statute. Casey moved for summary judgment, arguing he was not liable for legal malpractice as a matter of law. The district court granted Casey's motion. Taylor appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.[1] We affirm.

I.

Taylor worked for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO ("IUE") for over twenty years. Shortly after leaving his position with the IUE in 1992, Taylor initiated a union organizing campaign at the North American Phillips Plant in Salina, Kansas for the Teamsters Union. On August 3, 1992, IUE prepared an allegedly defamatory letter about Taylor and distributed it to

---

[1] Although not challenged by either party, we have an independent obligation to examine our own jurisdiction. Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir. 2001). The district court granted Defendants' motion for summary judgment, and then later dismissed Defendants' counterclaim without prejudice. A dismissal without prejudice does not confer finality for appellate jurisdiction. See Heimann v. Snead, 133 F.3d 767, 769 (10th Cir. 1998) ("Parties may not confer appellate jurisdiction upon us by obtaining a voluntary dismissal without prejudice of some claims so that others may be appealed."). We issued a jurisdictional show cause order directing counsel to obtain a district court order either granting a Fed. R. Civ. P. 54(b) certification as to the orders appealed or explicitly adjudicating the remaining counterclaim. See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645-46 (10th Cir. 1988) (en banc). The district court subsequently entered a Rule 54(b) certification. Although Taylor prematurely filed his notice of appeal, Taylor's notice of appeal has ripened. Id. at 645. We are satisfied the district court did not abuse its discretion in certifying the appeal under Rule 54(b), and we therefore accept jurisdiction. See Heimann, 133 F.3d at 769.

2

employees at the Salina, Kansas plant. Because of the letter, the Teamsters terminated their relationship with Taylor.

On July 29, 1993, Taylor filed a pro se complaint ("Taylor I") in Sedgwick County, Kansas against IUE and several individual IUE union leaders, alleging the letter was defamatory and tortiously interfered with his business relationship with the Teamsters. Taylor timely filed the defamation claim within Kansas' one year statute of limitations for defamation claims. See Kan. Stat. Ann. § 60-514(a). Taylor served process on IUE, but did not serve the individually named defendants. After Taylor filed the pro se complaint, he retained Casey to represent him. Casey subsequently filed a voluntary dismissal without prejudice, and Taylor I was dismissed.

Two weeks later, Casey filed suit in federal district court in Kansas ("Taylor v. Bywater"). The complaint named Taylor as plaintiff in his individual capacity and for the benefit of his wife. The complaint named as defendants several individually named IUE members, but not the IUE as an entity. The complaint alleged the same defamation and tortious interference claims as Taylor I, and also included a loss of consortium claim on behalf of Taylor's wife. Upon the defendants' motion to dismiss, the federal district court ruled that Taylor v. Bywater was filed beyond the one-year statute of limitations, and the suit was not saved by Kansas' savings statute. Taylor v. Bywater, 1994 WL 114293, at *1 (D. Kan. Mar. 29, 1994) (unpublished). Kansas' savings statute, Kan. Stat. Ann. § 60-518, permits plaintiffs to re-file a suit beyond the statute of limitations if the new suit is

3

filed within six months of a previous, substantially similar suit that was commenced within the limitations period and the first suit was dismissed otherwise than on the merits. The federal district court held § 60-518 did not apply because Taylor I and Taylor v. Bywater were not "substantially similar" because the complaints named different defendants. Id. The court also held Taylor's claims failed because under federal law, Taylor could not seek money damages against individual union members for acts done on behalf of the union. Id. at *3.

Following dismissal in Taylor v. Bywater, but within six months of the voluntary dismissal in Taylor I, Casey filed suit in Saline County, Kansas ("Taylor II"). This time, the complaint named Taylor as plaintiff in his individual capacity and as representative of his wife. The complaint named the IUE as defendant. The differences between Taylor I and Taylor II were (1) the addition of a loss of consortium claim on behalf of Taylor's wife; (2) the omission in Taylor II of the individual defendants named but not served in Taylor I; and (3) the addition in Taylor II of claims for invasion of privacy and outrageous conduct not alleged in Taylor I. The first difference was eliminated before trial in Taylor II when Taylor's wife passed away, and the loss of consortium claim was withdrawn.

Before trial in Taylor II, IUE moved to dismiss Taylor's defamation claim on statute of limitations grounds. The trial court held the defamation claim was barred because it was brought more than one year after the alleged defamation, and § 60-518 did not apply because Taylor II was not substantially similar to Taylor I. IUE then moved to

4

dismiss Taylor's tortious interference claim. The court denied the motion, ruling Taylor timely filed the tortious interference claim within the two-year statute of limitations. See Kan. Stat. Ann. § 60-513(a)(4). The case proceeded to trial. The jury found for Taylor in the amount of $105,000, and the court awarded $50,000 in punitive damages.

IUE appealed the jury verdict, arguing the tortious interference claim was barred by a one-year statute of limitations and § 60-518 did not apply because Taylor I and Taylor II had different parties. Taylor cross-appealed, arguing § 60-518 should have saved the defamation claim, and the district court erred by dismissing it. The Kansas Court of Appeals held Taylor's tortious interference claim was, essentially, just a defamation claim subject to a one-year, not a two-year, statute of limitations. Taylor v. International Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, 968 P.2d 685, 690 (Kan. App. 1998). The court also held that because the parties were different in Taylor I and Taylor II, § 60-518 did not save either of Taylor's claims. Id. at 689-90. On appeal, IUE also argued that the federal filing, Taylor v. Bywater, should be considered a previous refiling for purposes of § 60-518, barring a second refiling even if within the six-month savings period. The Kansas Court of Appeals did not address this argument, relying solely on the reasoning that the parties differed in Taylor I and Taylor II, and therefore the suits were not "substantially similar" as required by § 60-518. Thus, Taylor lost on appeal the damages he won at trial.

Taylor thereafter filed suit in diversity against Casey and Hutton & Hutton in

5

federal district court in Kansas ("Taylor v. Casey"), alleging legal malpractice and breach of fiduciary duty. Taylor alleged two negligent acts: (1) Casey failed to file a "substantially similar" action in Taylor II to qualify for § 60-518 protection, and (2) Casey wasted Taylor's one opportunity to benefit from § 60-518 by filing Taylor v. Bywater in federal court. Taylor sought as damages the $105,000 jury award and the $50,000 in punitive damages he lost on appeal in state court.

The district court granted summary judgment in favor of Casey, holding that Casey's alleged negligence concerned matters of unsettled law about which informed legal minds reasonably could disagree. The court also held that Casey's federal filing in Taylor v. Bywater was not a cause of Taylor's damages because the Kansas Court of Appeals did not rely on the federal filing to rule against Taylor. Finally, the district court concluded Taylor's breach of fiduciary duty claim could not survive because it rested on the same facts and allegations as the negligence claims.

II.

We review the district court's grant of summary judgment de novo applying the standard set forth in Fed. R. Civ. P. 56(c). Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231 (10th Cir. 2001). Because the district court's jurisdiction was based on diversity, we apply the law of the forum state, Kansas. Rancho Lobo, Ltd. v. Devargas, 303 F.3d 1195, 1200 (10th Cir. 2002).

To prevail on a legal malpractice claim under Kansas law, a plaintiff must show

6

"(1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage." Bergstrom v. Noah, 974 P.2d 531, 553 (Kan. 1999). In Kansas, issues of professional negligence generally should be left to the jury. Id. at 554. But when, "under the totality of circumstances as demonstrated by the uncontroverted facts, a conclusion may be reached as a matter of law that negligence has not been established, judgment may be entered as a matter of law." Id. An attorney "'is not liable . . . for a mistaken opinion on a point of law that has not been settled by a court of last resort and on which reasonable doubt may well be entertained by informed lawyers.'" Id. at 556 (quoting 7 Am. Jur. 2d, Attorneys At Law § 221).

### A.

Taylor first alleges Casey negligently failed to file a "substantially similar" action in Taylor II as required to fall within the protection of the Kansas savings statute. The federal district court concluded Casey was entitled to summary judgment on this issue because at the time Casey gave his legal advice, Kansas law was unsettled about the application of the savings statute, and the statute's applicability was reasonably debatable among informed legal minds.

At the time Casey rendered his legal services in this case, Kansas law was clear that a second action is not "substantially similar" under § 60-518 if it does not have the same plaintiffs as the first action. Rogers v. Williams, Larson, Voss, Strobel & Estes, 777

7

P.2d 836 (Kan. 1989). In <u>Rogers</u>, the Kansas Supreme Court held that because the plaintiffs' second suit (brought by the decedent's heir in her representative capacity as an estate administrator) did not have the same plaintiff as the first suit (brought by the decedent's heir in her individual capacity), the second action could not be saved by § 60-518.

As the district court recognized, <u>Rogers</u> did not settle the question of whether § 60-518 would save the claim of a plaintiff named in the same capacity in both the first and second actions, even if the second complaint added other plaintiffs to which the saving statute could not apply.[2] Arguably, in such an instance, the plaintiff named in both complaints does not forfeit his claims. Rather, the court simply should dismiss those claims not within the savings statute's protection, but allow to proceed those claims that do fall within the savings statute's protection. <u>Rogers</u> did not address this scenario, nor did it hint at what the proper outcome under Kansas law might be. As a result of this uncertainty, Casey established the law was unsettled.

---

[2] Although the plaintiffs in <u>Rogers</u> sued in their individual capacities in both their first and second suits, their individual claims were dismissed from the second action because of res judicata, not because the parties were different. In <u>Rogers</u>, the district court in the first action granted summary judgment in favor of the defendant, resulting in a judgment on the merits to which res judicata would apply. Because § 60-518 applies only to original actions which were decided "otherwise than on the merits," the <u>Rogers</u> plaintiffs' individual capacity claims were not eligible for § 60-518 protection regardless of party similarity. In contrast, <u>Taylor I</u> was voluntarily dismissed without prejudice. Consequently, res judicata would not apply, and § 60-518 could apply because a voluntary dismissal is not a decision on the merits.

Casey also established that informed legal minds reasonably could have disagreed about how the Kansas court of last resort would rule. To show disagreement, Casey first presented the district court with a Tenth Circuit case, Goldsmith v. Learjet, Inc., 90 F.3d 1490 (10th Cir. 1996). Casey argues that in Goldsmith, a Tenth Circuit panel held claims by a plaintiff named in the first and second suits remained viable under § 60-518 even though the second suit added plaintiffs to which § 60-518 did not apply. Thus, Casey argues that if judges on the Tenth Circuit held this view of the law, informed legal minds reasonably could disagree on the point. In Goldsmith, the plaintiff sued in his representative capacity in the first suit, and in his representative and individual capacities in the second suit. In conformity with Rogers, the Tenth Circuit dismissed the individual capacity claims because they were not included in the original suit. The Tenth Circuit did not dismiss the plaintiff's representative claims brought in the first and second actions because the Goldsmith defendants did not challenge the applicability of § 60-518 to the representative claims.

We agree with Taylor that Goldsmith did not hold as a matter of Kansas law that § 60-518 would save the claim of a plaintiff named in the same capacity in both the first and second actions, even if the second complaint added other plaintiffs to which the saving statute could not apply. See Goldsmith, 90 F.3d at 1495. But Goldsmith is not without significance. Apparently the Goldsmith *defendant* believed the savings statute preserved these claims. Id. (noting that the parties did not dispute that the Kansas savings

9

statute, if applicable, would save the claims of plaintiffs listed in both the first and second actions). The defendant's counsel knew Kansas law well enough to challenge the individual capacity claims under § 60-518, yet chose not to challenge the representative capacity claims under the same theory. This strategy at least suggests counsel believed § 60-518 saved those claims.

In addition to Goldsmith, Casey presented to the district court a University of Kansas Law Review article, written by two law professors, criticizing the Kansas Court of Appeals' decision in Taylor II. See William E. Westerbeke & Stephen R. McAllister, Survey of Kansas Tort Law: Part I, 49 U. Kan. L. Rev. 1037, 1135-36 (2001). According to the professors, the Kansas courts improperly dismissed Taylor's original defamation and tortious interference claims because Taylor in his individual capacity was a plaintiff in both the first and second suits. Taylor argues the article is irrelevant because it was written after Taylor II, and therefore could not have influenced Casey's legal decisions. But the question is not whether Casey relied on the article, but whether reasonable legal minds could have disagreed about the contours of Kansas law before the Taylor II ruling. The law professors' disagreement with the Kansas Court of Appeals' resolution, although after the fact, demonstrates legal debate about what Kansas law prior to Taylor II required.

Taylor also argues he has raised a genuine issue of material fact precluding summary judgment because his expert, Douglas Richmond, testified Casey was negligent

10

for not filing a substantially similar suit. As stated by Casey, however, Richmond's opinion that Casey was wrong amounts to "little more than debating over whether a debatable point is debatable. The simple fact of the existence of the debate is self-proving. Which side of the debate is correct . . . is irrelevant." The mere fact that such a debate could and did exist demonstrates that informed legal minds reasonably could disagree on the point. Casey has shown that § 60-518's applicability was unsettled and that reasonable doubt may have been entertained by informed lawyers on its scope. Accordingly, Casey is entitled to judgment as a matter of law.[3]

B.

Taylor also alleges Casey committed malpractice by filing Bywater v. Taylor in federal court because plaintiffs have only one opportunity to file a second suit under § 60-518. Thus, Taylor argues Casey "wasted" his one opportunity to benefit from § 60-518 by filing the federal case when Casey knew or should have known with reasonable investigation that the case would be dismissed. But the Kansas Court of Appeals did not reverse Taylor's verdict on this basis. Thus, Taylor cannot establish the required causal

---

[3] Taylor also argues the federal court's dismissal order in Bywater gave Casey a roadmap to follow to avoid dismissal. But, as stated by the district court, Bywater dismissed the case based on lack of similarity among *defendants*, and did not address what would happen when the second complaint added *plaintiffs* to which § 60-518 did not apply. See Bywater, 1994 WL 114293, at *1. Finally, Taylor notes that Casey allegedly told Taylor he "screwed up." Needless to say, an attorney could feel he "screwed up" when he interprets, incorrectly, how a court will rule on an unsettled point of law without the attorney being liable for malpractice.

11

connection between Casey's alleged negligence in filing Bywater and Taylor's damages. See Bergstrom, 974 P.2d at 553 (listing third element of malpractice claim as "a causal connection between the breach of duty and the resulting injury").

### III.

The district court dismissed Taylor's breach of fiduciary duty claim because it rests on the same facts as the negligence claim. Taylor argues the district court erred by treating his breach of fiduciary duty as synonymous with his negligence claim. On appeal, Taylor identifies only two alleged breaches of fiduciary duties: (1) Casey took a "high risk" approach by filing Bywater; and (2) if Casey had performed more research before filing Bywater, he would have known it was without merit. As discussed above, Taylor has no negligence claim against Casey, and Taylor cannot show that filing Bywater caused him any harm. Furthermore, Taylor did not allege or offer proof that Casey acted in bad faith, or that Casey acted in his own interests instead of his client's. See In re Conservatorship of Huerta, 41 P.3d 814, 821 (Kan. 2002) ("A fiduciary has the duty to act in good faith and with due regard to the interests of the party placing confidence in the fiduciary."); Unrau v. Kidron Bethel Retirement Servs., Inc., 27 P.3d 1, 14 (Kan. 2001) ("The goal of courts in imposing fiduciary duties is ensuring loyalty. To promote this goal, the courts require that a fiduciary act solely on behalf of its charge and that the fiduciary do so scrupulously and in good faith."). Taylor has not identified a cognizable breach of fiduciary duty that caused him harm, and Casey is entitled to

12

judgment as a matter of law.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge