(645 P.2d 911)
No. 53,372

CYLUS A. JOHNSON, *et al., Appellants,* v. ELSIE G. JOHNSON, Executrix, *et al.,* and In The Matter of The Estate of Albert R. Johnson, deceased, *Appellees.*

Petition for review denied June 28, 1982.

Opinion filed May 12, 1982.

*Philip Shaffer,* of Salina, for the appellants.

*C. Stanley Nelson,* of Hampton, Royce, Engleman & Nelson, of Salina, for the appellees.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: Cylus and Shirley Johnson (plaintiffs-appel-

lants) are husband and wife. They appeal from a denial of their motion for summary judgment and a grant of summary judgment to defendants. Plaintiffs claimed Albert R. Johnson, father of Cylus and two other sons, Adley E., and Don A., breached an agreement to treat Cylus equally with his brothers by executing a supplement to an existing trust instrument. The supplement provided that none of the brothers would receive any benefit, but the wives and children of the two other brothers would. We reverse as to each motion for summary judgment.

The total evidence before the trial court consisted of an original trust agreement, a first supplement, the court files in this and three earlier court proceedings, an agreement settling most issues in two of those proceedings, a second supplement to the trust agreement and an affidavit of attorney Aubrey G. Linville who represented Cylus when the settlement agreement was entered into. The factual representations of the affidavit are substantially as set forth hereafter and they are not disputed.

On May 21, 1969, Albert R. Johnson established a revocable trust which provided in relevant part that upon the death of the survivor of Albert and his wife Elsie G. Johnson:

"Trustees shall divide this trust into such number of separate shares of equal value as to provide one such separate share for each child of the Donor who is then living, and one such separate share for each child of the Donor who is then deceased but who has any one or more of a spouse or issue then living."

After the execution of the trust instrument, a dispute arose concerning family business operations. On August 13, 1970, Albert and Elsie filed a petition in the probate court of Saline County alleging that Cylus was mentally ill and requesting a determination of mental illness and an order of protective custody. On that same day an *ex parte* hearing was held, an order for protective custody was issued, and the sheriff took plaintiff into custody and delivered him to Asbury Hospital in Salina. Plaintiff was released on August 17, 1970, pending a final determination of his sanity.

On September 1, 1970, Albert signed an amendment to the trust termed a "First Supplement." It recognized a provision in the original which provided for funds for Albert and his wife during their lives. Instead of providing a share for each son or his family, however, it revoked the provision for Cylus or his family while it provided shares for the other two sons, or their families.

On September 10, 1970, the probate court determined that Cylus was not mentally ill and he was discharged.

On February 3, 1971, Cylus filed an action against Albert, Adley and Don seeking the dissolution of two family partnerships and accountings thereof. On August 13, 1971, Cylus filed an action against Albert and Elsie for false imprisonment and malicious prosecution arising out of the mental illness proceedings. On February 15, 1972, the day before trial, Albert, Elsie, Cylus and his wife Shirley, and their attorneys entered into a settlement agreement which provides in part:

"8. Upon performance of the above promises, Cy agrees to dismiss, with prejudice, Case No. 29,682 and Counts I and III of his Amended Petition in Case No. 29,356; and Albert shall dismiss the Second Counterclaim found in his Answer in Case No. 29,356. The court costs incurred in both cases to the dates of said dismissals shall be paid one-half by Cy and one-half by Albert and Elsie.

"9. Albert and Elsie agree that Cy shall receive the same share of Albert and Elsie's property as Adley E. Johnson and Don A. Johnson shall receive, whether by gift, Will, trust agreement, intestate succession, or any other means; it being the intent herein that Albert and Elsie shall treat Cy equally with his brothers, Adley E. Johnson and Don A. Johnson.

"10. Upon performance of the aforementioned promises, it is agreed that this Agreement shall constitute a full and final release of any and all claims which Albert and Elsie have against Cy and Shirley, and which Cy and Shirley have against Albert and Elsie."

On March 15, 1972, Albert executed a "Second Supplement" to the trust, providing in pertinent part:

"It is the express intent and purpose of the Donor that Cylus A. Johnson shall not receive any property from the Donor. The purpose of this Second Supplemental Trust Agreement is to provide that neither Adley E. Johnson nor Don A. Johnson shall receive any property from the Donor, whether by gift, will, trust agreement, intestate succession, or any other means, so that Cylus A. Johnson shall not be entitled to receive any property from the Donor under the provisions of Paragraph 9 of said Agreement dated February 15, 1972. Accordingly, subpart (1) of subparagraph (b) of Paragraph 2 of said Trust Agreement dated May 21, 1969, as supplemented and amended by Paragraph 1 of said First Supplemental Trust Agreement dated September 1, 1970, is hereby amended to be as follows:

"(1) The Trustees shall pay or distribute to or apply for the benefit of any one or more of a group consisting of the spouse of the beneficiary for whom such separate share is designated and the issue of such beneficiary such amount or amounts of the net income and principal of such separate share as the Trustees, in their absolute discretion, may determine at any time and from time to time, and the Trustees shall have the absolute discretion, at any time and from time to time, to make unequal payments or distributions to or among any one or more of said group and to exclude any one or more of them from any such payment or distribution. In no event shall any of the income or principal of any such separate

share be paid to or applied for the benefit of the beneficiary from whom such separate share is designated. . . .

"2. In no event shall the Trustees pay or distribute any of the income or principal of this trust or any of the separate shares created hereunder to or for the benefit of Cylus A. Johnson, Shirley L. Johnson, their issue of every degree or the spouse or spouses of their issue of every degree."

Albert died on January 26, 1977, and copies of the trust and amendments thereto were received by the attorney then representing Cylus on February 29, 1977. Cylus Johnson and his wife filed this action against Albert's estate on June 24, 1977, alleging fraud, breach of a confidential relationship and breach of contract.

Believing that the record in this case does not support the plaintiffs' claim of breach of a confidential relationship, our analysis turns upon whether the admitted facts show that the trust became burdened by a binding agreement resulting in the father thereafter being legally unable to make an inequitable change in the original trust provision which favored all three sons and their families. It is admitted that the wording of the original trust reserved the general right of revocation. As stated by Scott and Scott, Cases on Trusts, p. 621 (1966), citing Restatement (Second) of Trusts § 330, "The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power." Thus any restraint on Albert Johnson's power to revoke must come, if at all, as a result of the settlement agreement.

At the time this agreement was made each side was represented by counsel and no claim of lack of understanding has been advanced.

Neither is there any claim that the lawsuits then pending were without merit; rather, the terms of the settlement suggest the contrary. Accordingly, consideration for the agreement appears adequate. Consideration for a contract may consist of dismissal of pending judicial proceedings, at least if they are not palpably unjust or groundless. 17 C.J.S., Contracts § 107, p. 826. An agreement so made is not subject to repudiation. *Fieser v. Stinnett,* 212 Kan. 26, 31, 509 P.2d 1156 (1973).

Since this trust relates to postponed disposition of property, it is not unlike an agreement to leave property by will. As stated in 94 C.J.S., Wills § 117, p. 877, "An agreement to make a particular disposition of property cannot be rescinded by the promisor after performance on the part of the promisee without the promisee's

consent thereto. This would be an intolerable fraud which a court of equity will not permit." See also *In re Billinger's Estate,* 208 Kan. 327, 491 P.2d 924 (1971). Against this background, we turn to what interpretation and effect must be given to the settlement agreement.

In interpreting this contract we first note that the parties agree the contract is not ambiguous and we concur. The construction and interpretation of a contract unambiguous in its terms is a question of law for the courts. *Duffin v. Patrick,* 212 Kan. 772, 778, 512 P.2d 442 (1973). Regardless of the construction or interpretation of a written instrument by the trial court, on appeal the instrument may be interpreted and its legal effect determined by the appellate court. *Wichita Properties v. Lanterman,* 6 Kan. App. 2d 656, 661, 633 P.2d 1154 (1981). A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to such intention. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, Syl. ¶ 2, 508 P.2d 889 (1973); *Pottratz v. Firkins,* 4 Kan. App. 2d 469, 471, 609 P.2d 185 (1980). When a contract is unambiguous it must be enforced according to its terms so as to give effect to the intention of the parties at the time they entered into the contract, as determined from the instrument itself. *Steel v. Eagle,* 207 Kan. 146, 149, 483 P.2d 1063 (1971). The intention of the parties and the meaning of the contract are to be determined from the plain, general and common meaning of the terms used. *Duffin,* 212 Kan. at 778. The law favors reasonable rather than unreasonable interpretations. Results which vitiate the purpose or reduce the terms of the contract to an absurdity are to be avoided. *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, Syl. ¶ 3, 519 P.2d 646 (1974); *Pottratz,* 4 Kan. App. 2d at 471.

In searching for a reasonable interpretation which will avoid "absurdity," we regard paragraph 9 of the settlement contract as the operative paragraph with respect to the distribution of Albert and Elsie's property. We hold that the intent of the parties in this regard was that Cylus, Adley, and Don were to be treated equally in that each would share, not that they would be treated equally in sharing nothing. Any benefit conferred on Adley and Don by reason of the distribution of Albert and Elsie's property would also be conferred proportionately on Cylus.

The original trust instrument divided the remainder interest in

the property equally among Cylus, Adley, and Don. The first amendment to the trust divided the remainder interest between Adley and Don to the exclusion of Cylus. By subsequently executing the settlement contract, Albert invalidated the first trust amendment and limited his power to further amend the trust to amendments consistent with the contract. *Fieser,* 212 Kan. at 31. Further, at this time, the provision of the original trust first quoted in this opinion was reinstated: All sons were to share equally.

The second amendment to the trust was an attempt to again divide the remainder interest into two shares, labeled Adley's share and Don's share, to be administered and distributed for the use and benefit of the wives and children of Adley and Don, with express instructions that no distributions be made for the use or benefit of Cylus, Shirley, or their children. While the wording specified that no distribution was to be made for the *benefit* of Adley or Don, we can conceive of no circumstances where distributions for the use or benefit of the wives and children of Adley and Don would not at least indirectly benefit them also.

It is apparent that the second trust amendment was an attempt by Albert to indirectly accomplish that which he had contracted not to accomplish directly. Generally speaking, that which may not legally be done directly may not be accomplished indirectly. *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, Syl. ¶ 6, 507 P.2d 189 (1973).

It also is apparent how tangled would be the web that Albert would have woven if his second supplement were allowed to stand. Since any distribution to their families would be of some benefit to Adley or Don if living, the result would be that no distribution of any kind could be made after Elsie's death until every son had died.

One maxim of equity is that equity regards as done that which should be done, but the hand of equity has two sides. With one it creates that which should have been created but was not. With the other, it wipes away that which was attempted but should not have been.

The first supplement was made invalid by the settlement agreement. The second supplement is invalid because it was an improper attempt to avoid the settlement agreement. Thus, the trust stands as originally drawn.

Reversed and remanded with directions to enter summary judgment in favor of plaintiffs.