25 Kan. App.2d 671 (1998)
968 P.2d 685
RICHARD K. TAYLOR, Individually and for the benefit of BARBARA J. TAYLOR, his wife, Appellee,
v.
THE INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE and FURNITURE WORKERS, AFL-CIO (IUE), Appellant.
No. 77,491.
Court of Appeals of Kansas.
Opinion filed December 4, 1998.
Steven K. Hoffman and Marta Wagner, of James & Hoffman, P.C., of Washington, D.C., and C. Stanley Nelson, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, for the appellant.
Derek S. Casey, of Hutton & Hutton, of Wichita, for the appellee.
Before MARQUARDT, P.J., LEWIS, J., and C. FRED LORENTZ, District Judge, assigned.
LEWIS, J.:
Defendant appeals from a jury verdict awarding plaintiff $105,000 in compensatory damages and $50,000 in punitive damages. The verdict was rendered on plaintiff's claim that defendant was responsible for tortious interference with a prospective business advantage. Both parties have appealed. Plaintiff argues on *672 appeal that the trial court erred in holding his action for defamation was time barred.
We reverse the judgment in favor of plaintiff and affirm the issue on which plaintiff cross-appealed.
Plaintiff is a former union employee of defendant, the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO (hereinafter IUE).
Plaintiff had worked for IUE for 23 years as a union organizer. For reasons not entirely germane to this lawsuit, plaintiff ceased to be employed by IUE. The relationship between plaintiff and IUE became one of ill will after their business connection had been severed.
Plaintiff discovered that both IUE and the Teamsters Union were attempting to organize the Philips Lighting Plant in Salina. Plaintiff sought out a job from the Teamsters in an apparent attempt to interfere with the efforts of his former employer in organizing the Philips plant.
In the end, it does not appear that plaintiff was ever directly retained by the Teamsters, but he was nonetheless active on its behalf. Plaintiff's wife was hired by the Teamsters to work in its Salina office, and the Teamsters paid the living expenses of both plaintiff and his wife. Further, plaintiff and the Teamsters had reached an understanding that if his work proved to be satisfactory, it was possible that a Teamster job could be his in the future.
At one point, the IUE wrote the following letter to the Philips employees who supported the IUE's unionization efforts:
"August 3, 1992
"Dear IUE Committee Member:
"Approximately two weeks ago, it came to our attention that an individual named Richard Taylor was brought to the Salina area by Teamsters Local 696 and its Mr. Moore. This individual, a retired IUE employee, has apparently been given names and addresses of Philips workers and with the direction and assistance of Mr. Moore, has made several contacts.
"Mr. Taylor claims that, among other things, he was `poorly treated' by the President of IUE in his retirement, even though he received special early retirement benefits which included a large bonus and pension benefits of $30,000 per year from IUE. In addition to this generous pension, Mr. Taylor receives nearly

*673 $15,000 per year from the IUE-negotiated pension at the General Motors Packard Electric plant from which he has been on an extended leave of absence.
"Several members of the IUE Committee from Philips and two IUE staff recently met with Mr. Taylor. Mr. Taylor indicated that he has a personal vendetta against IUE and it was clear to those meeting with him that he is suffering from severe emotional strain. He has admitted to being `burnt out' and, just prior to retiring, sought a leave of absence from the IUE due to `chronic fatigue syndrome.'
"We cannot say for sure what has motivated Mr. Taylor's slanderous, personal attack on IUE. We do know, by his own admission that his expenses are being paid by Teamsters Local 696. We also know that he has had contact with management at NAP, but at this point we cannot prove he has a relationship with the Company. IUE has filed a complaint with the AFL-CIO against Local 696 for employing Taylor to interfere in your election campaign.
"If you are contacted by this individual or need additional information concerning Mr. Taylor, call us at 825-IUE-9 or stop by the IUE office."
"In Unity,
"IUE Staff."
Within a few days after the letter was received, plaintiff received the following letter from the Teamsters:
"August 6, 1992
....
"Dear Mr. Taylor,
"I am in receipt of a letter dated August 3, 1992, sent out by the IUE Staff from their office in Salina, Kansas. This letter has some very unsettling things to say about your past relationship and your mental state.
"We had discussed your working with us on a long term basis on organizing attempts in the Salina area, including the Philips, Exide, Tony's, and other campaigns. We also discussed some interest in a hospital campaign.
"You can well imagine how literature like this, about your `state of being', would damage our ability to achieve credibility with the units as discussed.
"It is with regret that I inform you that we will be unable to offer you the future associations with our organization as was discussed.
"As soon as you can tighten up loose ends, I would appreciate you leaving the Salina area and cease contact with the potential memberships.
"Respectfully,
"William A. Moore
"Business Manager"
Plaintiff contends that the IUE letter of August 3, 1992, said things about him which were false, misleading, and defamatory. The thrust of his lawsuit is that the false statements in the letter prevented him from obtaining employment with the Teamsters.
*674 Plaintiff's lawsuit is framed as one for tortious interference with a prospective business advantage. To relate that to the facts of this case, plaintiff argues that IUE, through the use of a false and defamatory letter, tortiously interfered with his prospective business advantage with the Teamsters.
In due time, the matter was submitted to the jury, which rendered the verdict mentioned above, and both parties appealed.

STATUTE OF LIMITATIONS
The trial court held that plaintiff's defamation cause of action was time barred and was not saved by the "saving statute," K.S.A. 60-518, and it never reached the jury.
Plaintiff's action was filed on April 7, 1994, more than 1 year after it accrued but less than 2 years after the date of accrual. A tortious interference with prospective business advantage cause of action must be brought within 2 years. K.S.A. 60-513(a)(4). An action for defamation must be brought within 1 year. K.S.A. 60-514(a).
Plaintiff argues that his claim for defamation was not time barred. He bases this argument on K.S.A. 60-518. If plaintiff is correct, we need not consider whether his petition states a cause of action in defamation or in tort. However, we are of the opinion that plaintiff's defamation cause of action was time barred and was not saved by the saving statute.
The saving statute provides, in pertinent part: "If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff ... may commence a new action within six (6) months after such failure." (Emphasis added.) K.S.A. 60-518.
The record shows that plaintiff was so exuberant over the prospect of his lawsuit against IUE that he filed two other actions, in addition to the one now under consideration, seeking the same damages.
On July 29, 1993, plaintiff filed an action in Sedgwick County, designated as 93-C-187-3. This action was voluntarily dismissed by plaintiff on November 2, 1993. We note this action was filed within *675 the period of limitations for a defamation action, and it is possible that the saving statute could apply.
On November 16, 1993, plaintiff filed case No. 93-C-1453-PFK in the United States District Court. This action was dismissed on March 29, 1994, on IUE's motion to dismiss based on the court's finding that the action was time barred.
K.S.A. 60-518 applies only if plaintiff's cause of action failed "otherwise than upon the merits." The dismissal of the action in the United States District Court on the basis of its being time barred was on the merits and therefore that action cannot benefit from the saving statute. See Murphy v. Klein Tools, Inc., 935 F.2d 1127, 1128-29 (10th Cir. 1991).
The Sedgwick County action is different. That action was dismissed by plaintiff without prejudice. It was dismissed prior to the date defendant filed an answer. See K.S.A. 60-241(a)(1)(i). This action was clearly terminated "otherwise than upon the merits" and appears on its face to fit the saving statute. We note that this action was dismissed on November 2, 1993, and the present action was filed on April 7, 1994, which was within 6 months of the dismissal of the Sedgwick County action. Plaintiff argued that the Sedgwick County litigation saved his defamation cause of action under the saving statute. The trial court disagreed and dismissed the defamation action as being time barred. The court also determined that the saving statute was inapplicable based on the decision in Rogers v. Williams, Larson, Voss, Strobel & Estes, 245 Kan. 290, 777 P.2d 836 (1989).
Defendant argues that the saving statute does not save plaintiff's cause of action for two reasons: (a) The action in Sedgwick County and the current action are not substantially the same in that the parties to each action are not identical; and (b) this is plaintiff's second or third attempt to use the saving statute.
In our analysis, we shall concentrate on the first reason submitted by defendant.
In Rogers v. Williams, et al., the trial court held that the saving statute did not apply because plaintiff's action was terminated on its merits. The Supreme Court affirmed and went on to say:

*676 "Additionally, however, there is another flaw in the plaintiffs' claim of error. Plaintiffs' second petition, in which they claim as administrators of the estate... does not have the same plaintiffs as the first petitionthey are suing in a different capacity. As co-administrators, they are representing the estate. Any judgment would be in favor of the estatenot the administrators as individuals. Hence, the same plaintiffs are not refiling an action within the purview of K.S.A. 60-518." 245 Kan. at 294.
The court said: "Plaintiffs suing as individuals in their first action and as representatives of decedent's estate in the attempted refiling are held not to be within the purview of K.S.A. 60-518." 245 Kan. 290, Syl. ¶ 3.
The position taken by the Supreme Court is one which requires the actions filed to be "substantially similar." The rule was well stated in Day v. NLO, Inc., 798 F. Supp. 1322, 1328 (S.D. Ohio 1992), where that court, in considering a statute nearly identical to 60-518, held:
"[T]he saving statute applies only if the original action and the subsequent action are substantially the same. [Citations omitted.] Where the parties and the relief sought in the new action are different from those in the original action, the actions are not substantially the same, and the saving statute does not apply. [Citation omitted.] In addition, where the relief sought is the same in both actions, but the defendants are different, the actions are not substantially the same for purposes of the saving statute. [Citation omitted.]" (Emphasis added.)
A number of other jurisdictions have adopted the substantially similar doctrine set forth above and in the Rogers decision. These include: Brown v. Hartshorne Public School Dist. No. 1, 926 F.2d 959, 962 (10th Cir. 1991) (saving statute disallows adding new defendants); Addie v. Mack Trucks, Inc., 613 F. Supp. 340, 341 (E.D. Mo. 1985) (cannot add new defendants); Vessichio v. Hollenbeck, 18 Conn. App. 515, 519-20, 558 A.2d 686 (1989) (cannot add a new defendant); Heyde v. Xtraman, Inc., 199 Ga. App. 303, 305, 404 S.E.2d 607 (1991) (the new case must be substantially similar to parties and causes of action in first case); Cherokee Ins. Co. v. R/I, Inc., 97 N.C. App. 295, 297-98, 388 S.E.2d 239, rev. denied 326 N.C. 594 (1990) (must have same parties and same causes of action); Rowe v. John Deere, 130 N.H. 18, 23-24, 533 A.2d 375 (1987) (cannot change defendants); Turner v. Aldor Co. of Nashville, Inc., 827 S.W.2d 318, 321 (Tenn. App. 1991) (must have same *677 parties); and MGTC, Inc. v. Northern Utilities, Inc., 733 P.2d 607, 609 (Wyo. 1987) (must have substantial identity of parties).
In the Sedgwick County action, Richard K. Taylor, individually, was the only plaintiff. The defendants were IUE, Gary Wise, Bob Few, Susan Few, and Ron Crider. In the instant action, Taylor is an individual plaintiff, but he also appears as plaintiff "for the benefit of Barbara J. Taylor, his wife." The sole defendant in the instant action is IUE.
It is quite apparent that the parties to this action are not the same as they were in the Sedgwick County action. In the first action, plaintiff was seeking to recover damages only for himself; now he also seeks to recover damages for the benefit of his wife. He is not suing in the same capacity as in the Sedgwick County action. In the original action, there were five defendants, and now there is only one. These two actions are similar only in the scope of the recovery sought. The parties are different, and they are not substantially similar.
Plaintiff argues that while the parties may be different, they are certainly substantially similar. We disagree. The weight of authority in this area holds that the change of parties from one action to another prevents the lawsuits from being substantially similar. The change of plaintiff's position from an individual position to one suing in another capacity was one of the reasons the Supreme Court in Rogers refused to find the actions substantially similar.
We hold that based upon Rogers and the other cases cited, the present action and the Sedgwick County case are not substantially similar and the saving statute does not save plaintiff's cause of action for defamation.
We affirm the trial court's conclusion that plaintiff's cause of action for defamation was time barred and was not saved by the saving statute.

TORT OR DEFAMATION
We have concluded that plaintiff's cause of action for defamation was time barred. The next question is whether plaintiff is attempting to avoid that time bar by disguising an action for defamation and calling it one for tortious interference.
*678 The law is clear in Kansas that the courts will look through form to substance in determining the true nature of a cause of action. "The general rule is that a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations or governmental immunity." Malone v. University of Kansas Medical Center, 220 Kan. 371, 376, 552 P.2d 885 (1976); see Gehring v. State, 20 Kan. App.2d 246, 249-51, 886 P.2d 370 (1994), rev. denied 256 Kan. 994 (1995).
Virtually all of the causes of action, including the one for tortious interference set out in plaintiff's petition, are based on the IUE letter dated August 3, 1992. The petition alleges that the statements made in the letter were false, defamatory, and misleading. In the final analysis, the success of plaintiff's lawsuit rests on whether the statements in the letter are true or false. If they are true, plaintiff has little to complain about. If they are false, plaintiff has a cause of action against defendant, but the question is whether it is a cause of action for tortious interference or it is one for defamation. Plaintiff does not deny that his tortious interference claim is based on alleged defamatory comments in the IUE letter.
We conclude that under the law, the cause of action for tortious interference with a business advantage was, in reality, one for defamation, which was time barred.
In Beeson v. Erickson, 22 Kan. App.2d 452, 917 P.2d 901, rev. denied 260 Kan. 991 (1996), we dealt with a lawsuit that arose out of a contract to build a new garage and driveway. The contract contained a binding arbitration clause, which applied to any action arising out of the contract. The plaintiffs attempted to avoid binding arbitration by disguising their action as one of tort.
We held that plaintiffs' cause of action arose out of a contract, that calling it a tort did not make it a tort, and that the matter must be referred to binding arbitration: "The question we must answer is whether a plaintiff may bring an action which arises out of the performance of a contract and call it a tort action, thereby rendering the mandatory arbitration clause in an agreement null and void? We conclude that such an attempt must fail." 22 Kan. App.2d at 456. Later, we said:

*679 "In the real world, plaintiffs' action arose out of and was based upon defendants' obligations under the contract. Only in the somewhat unrealistic world of theoretical legal pleading can a contract action become a tort action through the judicious use of legalistic semantics. We reject that course of action and conclude that plaintiffs may not plead their contract action as a tort action and thereby escape the provisions of a bargain with which they are unhappy." 22 Kan. App. 2d at 458.
See Isler v. Texas Oil & Gas Corp., 749 F.2d 22 (10th Cir. 1984); Ford Motor Cred. Co. v. Suburban Ford, 237 Kan. 195, 203-04, 699 P.2d 992, cert. denied 474 U.S. 995 (1985); L.R. Foy Constr. Co. v. Professional Mechanical Contractors, 13 Kan. App.2d 188, 194-95, 766 P.2d 196 (1988). The actions cited above all say that when the claim is a contractual claim, it does not become a tort claim merely because it is labeled as such.
The issue here is whether a plaintiff may plead a defamation action as a tortious interference action and thereby escape the bar of the statute of limitations. It is our conclusion that he or she cannot. Indeed, the trial court in this case commented regarding the tortious interference case: "That all smells like a libel suit dressed up in a different fashion." The court also said: "You're trying to make several causes of action from what should be a libel suit, which is time barred." The attorney for the plaintiff went on to say that "[t]he tortious interference is the publication of the letter."
In Evans v. Philadelphia Newspapers, Inc., 411 Pa. Super. Ct. 244, 601 A.2d 330 (1991), a plaintiff brought a cause of action against a newspaper for tortious interference with contract, defamation, and conspiracy. The issues in that case were nearly identical to the issues in the instant matter. In resolving those issues, the court said: "Specifically, we are asked to decide whether a tortious interference claim, which is based upon identical allegations set forth in an accompanying defamation claim, should be considered duplicative and, as such, be barred by the one year statute of limitations applicable to defamation claims." 411 Pa. Super. Ct. at 247-48.
The court recognized that certain tortious interference actions can arise from facts separate from a defamation, but when both *680 causes of action arise from the defamatory act, "the Appellants should not be able to circumvent the statute of limitations by merely terming the claim tortious interference when in essence it is one of defamation, subject to a one year limitation of action. In such a situation, we will look to the gravamen of the action, not to the label applied to it by plaintiffs." 411 Pa. Super. Ct. at 249. The court concluded that although tortious interference could arise from several acts other than defamation, when it arises from defamation, it is a defamation action to which the legislature has assigned a shorter period of limitation. 411 Pa. Super. Ct. at 249. The court went ahead to determine that because Evans'"claim for tortious interference is based upon the alleged false and defamatory character of the communication complained of, and it is indistinguishable from the claims of libel and slander, the same one year limitation period should apply to both." 411 Pa. Super. Ct. at 252.
In Manildra Mill. Corp. v. Ogilvie Mills, Inc., 723 F. Supp. 567, 569 (D. Kan. 1989), the court held that a claim entitled "unfair competition" was a business libel action and was governed by the Kansas 1-year statute of limitations in K.S.A. 60-514(a).
In Eddy's Toyota of Wichita, Inc. v. Kmart Corp., 945 F. Supp. 220, 225 (D. Kan. 1996), a tortious interference with contract cause of action was determined, under Kansas law, to actually be a malicious prosecution cause of action, because the action was based solely on the allegations of a malicious lawsuit. The court said:
"Other jurisdictions have squarely held that the alleged malicious filing of a lawsuit may not be the basis for a tortious interference claim because to do so would avoid the policy considerations underlying the distinct limitations periods. [Citations omitted.] Courts have also held that an expired claim for defamation cannot form the basis for a tortious interference claim for the same reason. [Citations omitted.]" 945 F. Supp. at 226.
Based upon the authorities we have reviewed, we conclude that plaintiff's tortious interference action is in reality one for defamation and is subject to the 1-year defamation statute of limitation found in K.S.A. 60-514(a). The alleged tortious interference action is clearly and solely based on the alleged defamatory statement in the IUE's August 3, 1992, letter. Plaintiff will not be permitted to *681 escape the bar of the statute of limitations by calling a defamation action a tortious action for interference with a business advantage. We hold the trial court erred in submitting plaintiff's action to the jury. We conclude that plaintiff's cause of action was one for defamation and was time barred.
Accordingly, we reverse the judgment entered in favor of plaintiff and enter judgment on behalf of defendant.
Affirmed in part and reversed in part.