(31 P.3d 970)
No. 85,460

MEYER LAND & CATTLE COMPANY, *Appellant,* v. LINCOLN COUNTY CONSERVATION DISTRICT; RON FEDERKING, DAVID MORRICAL, DARRELL OETTING, DAVID BELL, DALE ROSEBROOK, AS INDIVIDUALS AND AS SUPERVISORS FOR THE LINCOLN COUNTY CONSERVATION DISTRICT; AND KANSAS STATE CONSERVATION COMMISSION, *Appellees.*

Opinion filed September 14, 2001.

*Karen K. McIlvain,* of McIlvain Law Office, for appellant.

*M.J. Willoughby,* assistant attorney general, and *Carla J. Stovall,* attorney general, for appellees.

Before GREEN, P.J., KNUDSON, J., and PHILIP C. VIEUX, District Judge, assigned.

VIEUX, J.: Meyer Land & Cattle Company (Meyer) appeals from the trial court's dismissal of its action for failure to state an actionable claim against the Lincoln County Conservation District (Lincoln) and its directors in their individual and supervisory capacities and the Kansas State Conservation Commission (Commission). We affirm.

Meyer built a lagoon on a plot of land contemplated for use as a cattle yard. On October 2, 1998, the Lincoln board of directors sent a letter to the Kansas Department of Health and Education

(KDHE) expressing a suspicion that the lagoon was leaking water. They were concerned that cattle waste could contaminate the local groundwater. Lincoln requested that the KDHE conduct its own percolation test before Meyer was cleared to use the land for cattle.

Lincoln, for reasons not given, sent copies of the letter to every conservation district in Kansas, to assorted State administrative agencies, and to various elected representatives, including Kansas' United States Senators and Representatives. Meyer proffers that a total of 122 persons or agencies received copies of the letter.

On December 16, 1999, Meyer filed a petition, listing the following nine counts:

I.  Action outside the scope of statutory duties;
II.  Abuse of power;
III.  Misstatement of fact;
IV.  Misrepresentation;
V.  Interference with business;
VI.  False light;
VII.  Defamation;
VIII.  Failure to carry out duties in a reasonable manner and in good faith; and
IX.  Failure to comply with statutory, regulatory, and constitutional duties.

Imbedded in the claim of failure to carry out its duties were an allegation of civil conspiracy and an alleged equal protection violation.

On May 17, 2000, the trial court dismissed all counts. The court found the essence of the action was libel, as all claims stemmed from a single written communication. Because a 1-year statute of limitations applies to libel, K.S.A. 60-514(a), the court concluded all claims were time barred. Meyer appeals, essentially claiming the court dismissed the case without allowing meaningful discovery which would have allowed it to show why the statute of limitations did not apply.

In reviewing a trial court's decision to dismiss a petition for failure to state a claim, an appellate court scrutinizes the petition itself to determine whether, in the light most favorable to plaintiff, the petition states any valid claim for relief. Dismissal is justified only

when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Colombel v. Milan*, 24 Kan. App. 2d 728, 729, 952 P.2d 941 (1998).

However, when a complaint establishes on its face that the applicable statute of limitations has run on one or more claims, those claims are subject to dismissal. See *Turner and Boisseau v. Nationwide Mut. Ins. Co.*, 944 F. Supp. 842, 844 (D. Kan. 1996) (construing Fed. R. Civ. Proc. 12[b][6]). In determining whether a plaintiff timely raised his or her claims, the court will look through the form to the substance of each cause of action. *Taylor v. International Union of Electronic Workers, et al.*, 25 Kan. App. 2d 671, 678, 968 P.2d 685 (1998), *rev. denied* 267 Kan. 892 (1999).

Contrary to Lincoln's arguments on appeal, it is not strictly germane whether Meyer pleads torts unrecognized in Kansas. If, on the facts pled in the petition, Meyer is entitled to relief under any valid legal theory, the action may proceed. *Jack v. City of Wichita*, 23 Kan. App. 2d 606, 608, 933 P.2d 787 (1997).

Analyzing the entire pleading, we discern three distinct causes of action: defamation, tortious interference, and civil conspiracy. Meyer also asserts on appeal that there is present a claim based upon federal equal protection rights. Meyer raises a number of other counts set out as independent torts which are, in essence, one or more elements of the core claims. The misstatement of fact, misrepresentation, and false light claims are restatements of the defamation count. The accusations of action outside the scope of statutory duties, abuse of power, failure to carry out duties in a reasonable manner and in good faith, and failure to comply with statutory duties are basically restatements of his tortious interference count. These claims are merely derivative of the core claims and, to the extent they are actionable at all, depend upon the validity of the main causes of action.

The court dismissed the entire action solely upon the finding that the statute of limitations for the core libel action had lapsed. As a result, we must determine whether the trial court correctly applied the corresponding 1-year period of limitations to every cause of action. If one or more causes of action do not spring

directly from the alleged defamatory act, the trial court prematurely dismissed the case, and a remand is required.

Normally, an appellate court will affirm where it is convinced the trial court reached the right result for the wrong reasons. See *TMG Life Ins. Co. v. Ashner,* 21 Kan. App. 2d 234, 257, 898 P.2d 1145 (1995) (appellate court affirmed where trial court used erroneous reasoning to reach proper result). In the context of liberally construed, notice-oriented pleading, however, we will not look for alternative reasons to support the trial court's conclusion. As a result, potential defenses under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.,* and Lincoln's claims of qualified immunity for its individual board members are not relevant at this time. They are more in the nature of affirmative defenses and ordinarily require the finder of fact to resolve certain factual issues. See *Goldbarth v. Kansas State Board of Regents,* 269 Kan. 881, 888, 9 P.3d 1251 (2000) (qualified immunity is an affirmative defense requiring plaintiff to show defendant violated a clearly established constitutional right). The trial court is in a better position to evaluate the applicability of such issues.

We turn to the defamation count and its derivative claims. Lincoln argued, and the trial court found, that *Taylor,* 25 Kan. App. 2d 671, applied and all of Meyer's claims were time barred by the 1-year statute of limitations on defamation.

In *Taylor,* the defendant, a former employer of the plaintiff, had written plaintiff's current employer alleging that the plaintiff was mentally unstable. The plaintiff brought a defamation claim and a claim for tortious interference, both based solely on the content of the letter. The period of limitations for defamation had lapsed, although the 2-year period of limitations for tortious interference had not. See K.S.A. 2000 Supp. 60-513(a)(4); K.S.A. 60-514(a).

The trial court struck the defamation claim but allowed the tortious interference claim to proceed to jury trial. The jury found in favor of the plaintiff. Our Court of Appeals concluded that the action was, at heart, one of defamation. Accordingly, it remanded with directions to strike the jury's finding of tortious interference: "[The] plaintiff will not be permitted to escape the bar of the statute of limitations by calling a defamation action a tortious action

for interference with a business advantage." 25 Kan. App. 2d at 680-81.

Although *Taylor* specifically analyzes the relationship between tortious interference and libel, the rationale applies equally to other counts clearly derivative of the core defamation claim. Here, it is apparent on the face of the petition that Meyer has raised multiple claims that Lincoln knowingly communicated false information. These misrepresentation-based claims all rest upon the core claim that the letter is a lie, all are essentially allegations of defamation, and all are similarly time barred.

As a result, under *Taylor*, the 1-year statute of limitations pertaining to defamation bars the claims for defamation, misstatement of fact, misrepresentation, and false light.

We turn next to Meyer's tortious interference claim. The requirements to show tortious interference with an existing or prospective business relationship are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct. *Macke Laundry Service Ltd. Partnership v. Mission Assocs., Ltd.*, 19 Kan. App. 2d 553, 561, 873 P.2d 219, *rev. denied* 255 Kan. 1002 (1994).

*Taylor* is directly on point. In *Taylor*, the court noted that on the facts presented the statements would have to be false in order for tortious interference to be indicated. "In the final analysis, the success of plaintiff's lawsuit rests on whether the statements in the letter are true or false. If they are true, plaintiff has little to complain about." 25 Kan. App. 2d at 678. Similarly, if in fact Lincoln's statements are true, Meyer can proceed only if he can show that Lincoln committed misconduct by communicating the truthful statements to KDHE. Otherwise, Meyer has no addressable claim.

Meyer has not provided any relevant law supporting its position that Lincoln was barred from communicating with KDHE. In fact, the regulations pertaining to county conservation districts contem-

plate close cooperation among the various State and local agencies involved in environmental management. See, *e.g.*, K.A.R. 11-7-7 (KDHE has direct role in reviewing conservation district's overall pollution management plan). Further, KDHE itself is responsible for establishing the standards for livestock waste control systems. K.A.R. 11-7-14(h). If Lincoln's statements are true, it appears Meyer in fact possessed a lagoon which failed minimum water quality standards. Why Lincoln communicated this fact to an array of government and administrative entities is unexplained, but Meyer has not linked that dissemination to any particular harm.

Generally, when powers are expressly conferred on an officer or governmental board, the power is implied to take such reasonable means as may be necessary for effective exercise of the powers conferred and discharge of the duties imposed. *Edwards County Comm'rs v. Simmons*, 159 Kan. 41, 53, 151 P.2d 960 (1944). There is no indication the legislature would consider Lincoln's request for an independent test inappropriate where it was made in the context of cooperatively managing water quality in the district. Meyer has not adequately pled a breach of duty.

Even if inappropriate, Lincoln's request to KDHE for testing did not result in actionable tortious harm in the context of tortious interference. Meyer has not pled specific interference with a particular business relationship. See *Macke*, 19 Kan. App. 2d at 561 (plaintiff must show it was reasonably certain to recognize an identifiable future economic benefit). Rather, Meyer is asserting general damage to its reputation as a business. This sort of general public stigma is what the tort of defamation is meant to address.

Meyer attempts to rehabilitate its tortious interference claim by noting that it is a business entity, rather than an individual. As a result, Meyer argues, tainting of its business reputation is, in essence, a tortious interference with all of its business relationships and directly depletes its goodwill. Meyer has advanced no case law supporting its distinction, and the argument is not convincing. Meyer must still plead a specific business expectancy in order to move the claim from the realm of defamation to the realm of tortious interference. Additionally, Meyer's argument does not address the reliance on the same false statements supporting the def-

amation claim and does not distinguish *Taylor's* holding. See 25 Kan. App. 2d at 678-81.

We conclude Meyer's claims for abuse of power, failure to carry out statutory duties in good faith, and failure to comply with statutory duties are, in essence, incomplete restatements of his tortious interference count, which is in turn derivative of the defamation count. All are time barred under *Taylor*.

Turning now to Meyer's conspiracy claim, Meyer alleges the individual members of Lincoln's board of directors conspired on the above counts. Elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984). In order for civil conspiracy to lie, the claim must base itself on a valid, actionable underlying tort. 234 Kan. at 967; *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 476, 620 P. 2d 837 (1980). The court dismissed Meyer's petition based solely on the running of the statute of limitations for defamation. The issue is whether a tort that is time barred as a procedural matter may nevertheless form the basis for alleging harm in a civil conspiracy claim.

Kansas has not addressed this issue directly. In *Knight*, the court affirmed the dismissal of a number of substantive tort claims based on the lapse of the statute of limitations for libel and appeared to dismiss the plaintiff's accompanying conspiracy claims as well, without comment. See 5 Kan. App. 2d at 482-84 (court affirmed dismissal of untimely defamation count against another defendant, but did not reinstate claim of civil conspiracy against defendant upon remand). Although one may imply that Kansas would consider a time-barred tort unqualified to form the basis for civil conspiracy, *Knight* did not explicitly make this holding.

Other jurisdictions are split. In *Chevalier v. Animal Rehabilitation Center, Inc.*, 839 F. Supp. 1224 (N.D. Tex. 1993), the court noted that Texas considered the statute of limitations to be merely a bar to recovery, rather than a substantive defense attacking the merits of the case—the wrongful act still existed. As a result, the underlying bad act could support a conspiracy claim even where

the statute of limitations had run on that act. 839 F. Supp at 1232-33. In Texas, civil conspiracy is considered to be an action for personal injury to another and has an independent 2-year period of limitations. *Stevenson v. Koutzarov*, 795 S.W. 2d 313, 318 (Tex. App. 1990), *writ den.* (Jan. 30, 1991).

Other jurisdictions hold that where the underlying tort is barred by the applicable statute of limitations, the conspiracy itself is likewise barred. See, *e.g., Flowers v. Carville*, 112 F. Supp. 2d 1202, 1213 (D. Nev. 2000); *Scholes v. American Kennel Club, Inc.*, 1999 WL 799532 (S.D.N.Y. Oct 07, 1999). The most convincing policy expression for this stance is found in *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa. Super. Ct. 244, 601 A.2d 330 (1991). This case addressed a related matter and was persuasive to the *Taylor* court. See *Taylor*, 25 Kan. App. 2d at 678.

"Our legislature has given torts short or long statutes of limitations for certain policy reasons. It is therefore clear that a longstanding policy exists in Pennsylvania to allow defendants in defamation cases an opportunity to make a prompt investigation of claims made against them while the evidence is still fresh in the minds of prospective witnesses. This is especially necessary for cases involving slander because the actual content of the statements could quickly fade from the minds of witnesses. Even where the case involves libel, it is still necessary to investigate the circumstances surrounding the making of the statement and it is crucial that it is done promptly.

"The reason behind the public policy requiring a one year statute of limitations for defamation exists whether the cause of action is for defamation or the gravamen of a cause of action for tortious interference with a contract relationship is defamation. Furthermore, in creating a cause of action for tortious interference with a contract, there is nothing to suggest that the courts intended that a claim which was basically one of defamation should be given a two year statute of limitations. [Citations omitted.]" 411 Pa. Super. at 249-50.

While civil conspiracy is a separate, actionable tort, in order to prove conspiracy, the plaintiff would also have to show the underlying tort was committed. Where the underlying tort is time barred, the focus shifts to the legislature's reasons for limiting the time permitted to bring the underlying tort. In order to prove Lincoln conspired, Meyer would have to prove the underlying defamation. This cause of action is time barred for the reason stated earlier. Under the particular facts of this case, we believe that Meyer's civil

conspiracy count is also subject to the underlying statute of limitations for defamation. As a result, we affirm the trial court's dismissal of this count.

Finally, Meyer claims it was denied equal protection.

In order to establish and to plead a violation of equal protection based on selective enforcement, plaintiff must show: (1) the person,, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999).

Meyer contends that the claim contained in count VIII of the petition is a claim of damages for a denial of equal protection. The count itself is entitled "Failure to Carry Out Duties in Reasonable Manner and in Good Faith." The paragraphs contained in count VIII allege that the board of directors failed to act in a reasonable manner and in good faith. Meyer contends that this was done through the board's failure to discuss the matter with plaintiff, to apprise themselves of the actual facts, to notify plaintiff of the fact that the alleged defamatory letter was sent, and that Meyer was, without elaboration, treated differently. Meyer cites no law in its brief to support the contention that this particular count is pled as a cause of action for a denial of equal protection, nor does the petition contain any notation that this is a claim for a denial of equal protection. Even the prayer of the petition fails to mention any claim for a denial of equal protection. The prayer only asks for damages for failure to act in good faith and failure to carry out its duties in a reasonable manner. Further, although not absolutely required—but notable by its absence—in this particular case, nothing presented in the body of the petition, the prayer of the petition, or in Meyer's brief, even mentions an action pursuant to 42 U.S.C. § 1983 (1994).

The petition at hand is fatally flawed, even under notice pleading requirements, as a claim for a violation of equal protection in that it fails to allege anyone similarly situated was treated differently. The petition only claimed that Meyer was treated differently, which

is not in and of itself a violation of equal protection. The statement that Meyer was treated differently is almost surplusage and somewhat inexplicable given the fact that no other elements of a cause of action for violation of equal protection was stated. In essence, this count is clearly an allegation designed either to enforce Meyer's theory of defamation to bolster its claim that defendants knew the statements in the letter were false or to re-plead its previous allegation of breach of duty. If Meyer intended to allege a claim for denial of equal protection, it should have done so and done so understandably.

K.S.A. 2000 Supp. 60-208(a)(1) requires a short and plain statement of the claim showing that the pleader is entitled to relief. However, traditional causes of action and rules for pleading causes of action still occupy an important position in law. Notice pleading did not do away with the traditional causes of action or the need to at least present the "bare bones" of the cause of action in the petition in a concise and understandable manner. The claim is to be provided by the petitioner and not by the supposition of the court.

While it is true that this court will not dismiss a pleading when any cause of action, mentioned specifically or not, is present in the allegations of the pleading, this court cannot supply a cause of action when it is clear from reading the entire pleading that it was not meant to be pleaded and it is not contained in the pleading in any understandable form. The petition and the appellant's brief set forth the gravamen of this count as being that Lincoln had a duty to investigate and "prevent the wrongs" which, in turn, it claims was caused by a false letter. This is not an equal protection cause of action.

As noted earlier, the trial court dismissed all plaintiff's claims solely on its finding that they were all barred by the 1-year statute of limitations for libel. This finding also applies to what Meyer proposes is an equal protection claim.

Affirmed.