**Richard K. TAYLOR, Plaintiff,**

v.

**Derek S. CASEY, and Hutton & Hutton, Defendants.**

No. 00–1448–JTM.

United States District Court, D. Kansas.

Jan. 23, 2002.

Larry G. Michel, James R. Angell, Kennedy, Berlkey, Yarnevich & Williamson, Chtd., Salina, KS, for plaintiff.

Thomas L. Theis, Caleb Stegall, Foulston & Siefkin L.L.P., Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on defendants' motion for summary judgment in their favor on all of plaintiff's claims against them. The motion is fully briefed and ripe for determination. For the reasons set forth below, the defendants' motion is granted in part and denied in part.

## I. Statement of Uncontroverted Fact

During the period from January 1969 to April 1992, plaintiff worked as a staff representative for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO ("IUE"). In April of 1992, he left the position after a disagreement with IUE leadership. In July of 1992, plaintiff initiated a union organizing campaign at the North American Phillips Plant in Salina, Kansas for the Teamsters Union. On August 3, 1992, IUE prepared and distributed a defamatory letter regarding plaintiff to many of the North American Phillips Plant employees. As a direct result of the August 3 letter, the Teamsters terminated their relationship with plaintiff.

Plaintiff initially consulted with Wichita, Kansas attorney Alan Herman in an attempt to seek redress for IUE's alleged tortious conduct. Herman and his firm did not take the case due to an inability to reach agreement on a fee arrangement. Taylor Deposition, Plaintiff's Response, Attachment A ("Taylor Deposition"), at 10–11. Nonetheless, Taylor filed a complaint, which he signed, in Sedgwick County, Kansas District Court against IUE and several individual union leaders alleging defamation and tortious interference with business relations. Taylor I Petition, Defendants' Memorandum in Support, Tab 1. Plaintiff filed case number 93 C 1879 ("*Taylor I*") on July 29, 1993 and obtained service on IUE on October 26, 1993. The individual defendants in *Taylor I* were not served within the relation back period as applied to the one-year statute of limitations for defamation actions pursuant to K.S.A. § 60–514. *Taylor I* thus proceeded against only IUE.

At the time attorney Herman declined plaintiff's case, he referred plaintiff to attorney Christopher Christian, a senior member of what is now defendant Hutton and Hutton ("the Firm"). Taylor Deposition, at 14–15. When plaintiff went to the Firm, he met only with defendant Casey ("Casey"). *Id.* On October 12, 1993, Christian entered the appearance of both himself and Casey. *Taylor I* Entry of Appearance, Defendants' Memorandum in Support, Tab 2. Plaintiff was of the understanding that Casey would do the "foot work" for the case, but that Christian was going to actually represent plaintiff at trial and subsequent proceedings. Taylor Deposition, at 106–7. Plaintiff further stated that he was relying on Casey to exercise his best judgment on his behalf. Shortly

after appearing, on November 2, 1993, Casey filed a voluntary dismissal without prejudice of *Taylor I*.

On November 16, 1993, Casey filed a new case in the U.S. District Court for the District of Kansas, case number 93–1453–PFK, styled *Richard K. Taylor, individually and for the benefit of Barbara J. Taylor, his wife, Plaintiff vs. William H. Bywater, Edward Fire, and George Clark, individually, and as representatives of a class of individuals comprising an unincorporated association known as the IUE*, Defendants ("*Bywater*"). Class Action Complaint, *Taylor v. Bywater*, Defendants' Memorandum in Support, Tab 4. *Bywater* again alleged defamation and tortious interference against the individual leaders of the IUE. However, IUE was not named as an entity. Additionally, the federal complaint included a claim for loss of consortium on behalf of plaintiff's wife. Judge Kelly dismissed *Bywater* because the statute of limitations had run on plaintiff's defamation claim and the Kansas savings statute, K.S.A. § 60–518, did not apply because the parties in *Bywater* differed from the parties in *Taylor I*. Judge Kelly further ruled that plaintiff's other causes of action were precluded by federal union statutes which protect individuals involved in union activity.

On April 7, 1994, less than six months after the voluntary dismissal of *Taylor I*, Casey filed on plaintiff's behalf a lawsuit in Saline County, Kansas, case number 94 CVC 160, styled *Richard K. Taylor, individually and for the benefit of Barbara J. Taylor, his wife, Plaintiff vs. IUE* ("*Taylor II*"). *Taylor II* Petition, Defendants' Memorandum in Support, Tab 6. *Taylor II* differed from *Taylor I* in the following ways: 1) *Taylor II* added a claim for loss of consortium on behalf of plaintiff's wife; 2) the individual defendants who were named but not served in *Taylor I* were omitted from *Taylor II*; and 3) *Taylor II*

included claims for invasion of privacy and outrageous conduct which were not claimed in *Taylor I*. The first difference was eliminated before *Taylor II* went to trial when plaintiff's wife passed away, requiring the withdrawal of the loss of consortium claim.

Upon IUE's motion to dismiss plaintiff's defamation claim, the Saline County court held that plaintiff brought the claim outside the one-year statute of limitations and that K.S.A. § 60–518 did not apply because *Taylor II* was not substantially similar to *Taylor I*. September 22, 1994 Order, Defendants' Memorandum in Support, Tab 7. Shortly thereafter, IUE moved for summary judgment on plaintiff's tortious interference claim arguing that plaintiff had failed as a matter of law to establish the elements of tortious interference. Plaintiff contends that, at some point, the IUE raised the issue of the application of a one-year statute of limitations to plaintiff's tortious interference claim. Plaintiff's Memorandum in Opposition, at 4 ("Although the record is less than clear as to how and when the issue was raised, the IUE undoubtedly brought the issue before the Saline County District Court."). Plaintiff additionally references an incidental comment that the district judge made with regard to the tortious interference claim "smell[ing] like a libel suit dressed up in a different fashion." *Id.* On the other hand, defendants contend that the IUE did not introduce the statute of limitations issue as it pertains to plaintiff's tortious interference claim before the Saline County District Court. Defendants rely on the absence of such argument from IUE's motion for summary judgment. *Taylor II* Memorandum in Support of Summary Judgment, Defendants' Memorandum in Support, Tab 8. The court has perused the *Taylor II* memorandum as well as the Saline County District Court's September 22 order on IUE's motion to dismiss. The court con-

cludes that IUE did not raise the limitations issue as it relates to the tortious interference claim before the Saline County District Court. Nor has plaintiff in this case provided any relevant documentation that would refute that conclusion. The court thus finds it uncontroverted that IUE did not argue before the Saline County trial court that the one year statute of limitations barred plaintiff's tortious interference claim.

The *Taylor II* court denied IUE's motion for summary judgment on plaintiff's tortious interference claim. That claim went to a jury which returned a verdict for plaintiff, awarding him $105,000 in actual damages and punitive damages which the court determined to be $50,000. The damages sought in the present case are the amounts recovered in *Taylor II* but which were subsequently lost on appeal, as described below.

IUE appealed the *Taylor II* verdict contending that a one-year statute of limitations applied to plaintiff's tortious interference claim and that K.S.A. 60–518 did not apply because *Taylor I* and *Taylor II* had different parties. Plaintiff cross appealed arguing that 60–518 should have applied to all of *Taylor II* and that the Saline County District Court erred in dismissing his defamation claim as time barred. The Kansas Court of Appeals held that the one-year statute of limitations applied to plaintiff's tortious interference claim and that the statutory saving provision did not apply to save that claim. *Taylor v. IUE*, 25 Kan. App.2d 671, 968 P.2d 685 (1998), Defendants' Memorandum in Support, Tab 13. The court will address, in detail, the basis for the Court of Appeals' ruling below, but sees no value in treating such matters as uncontroverted facts as suggested by defendants. At best, such an analysis involves a mixed question of law and fact.

IUE also argued on appeal in *Taylor II* that *Bywater* should have been considered a previous filing for purposes of K.S.A. § 60–518, barring a second refiling even if within the six-month statutory savings period. The Court of Appeals did not base its holding on this particular theory and did not appear to give the argument any consideration. On December 31, 1998, Casey filed, on plaintiff's behalf, a Petition for Review with the Kansas Supreme Court, which denied that request on April 27, 1999. Following receipt of the Kansas Supreme Court's final decision denying review, plaintiff asked Casey what happened and Casey stated "I screwed up, I misinterpreted the law." Taylor Deposition, at 123.

On November 7, 2000, plaintiff filed the instant action alleging legal malpractice and breach of fiduciary duty. Plaintiff's legal malpractice claim has its basis in two theories: that Casey's actions fell below the standard of care by "failing to file a similar action" and by "attempting to benefit from the [savings] statute more than one time." Pretrial Order, Defendants' Memorandum in Support, Tab 20. Pursuant to the court's scheduling order in this matter, plaintiff designated one expert witness, Douglas R. Richmond ("Richmond"). Richmond has been a partner and associate with Armstrong, Teasdale, L.L.P. from March 1989 to present. He is a lecturer at the University of Kansas School of Law and has authored approximately forty articles. In his expert report, dated October 13, 2000, Richmond states his opinion that Casey was liable for professional malpractice for the two reasons claimed by plaintiff in the pretrial order, i.e., naming different parties in *Taylor I* than in *Taylor II* and filing *Bywater*, which Richmond believed was plaintiff's only opportunity to utilize K.S.A. 60–518.

Defendants raise several points regarding the opinion provided by Richmond. First, in preparing his opinion, Richmond

admitted that he had not considered the Tenth Circuit Court of Appeals decision in *Goldsmith v. Learjet*, 90 F.3d 1490 (10th Cir.1996). *Goldsmith* does bear on this matter and will be discussed in detail below. In short, Richmond testified that the *Goldsmith* holding would have allowed plaintiff's individual claims in *Taylor II* to go forward. This, of course, was not the ruling of the Kansas Court of Appeals.

Richmond also admitted that *Taylor I* was never commenced against the individual defendants named therein because plaintiff never served them and K.S.A. § 60–203 requires service before an action is commenced against a particular defendant. Richmond did qualify, however, that he believed the case law at issue defined commencement differently than 60–203. Richmond Deposition, at 53–54, Defendants' Memorandum in Support, Tab 21.

Next, Richmond testified that based exclusively on the language of K.S.A. § 60–518, reasonable attorneys could have different opinions as to whether the individual named defendants in *Taylor I* needed to be named in *Taylor II* in order to take advantage of the savings statute. Richmond Deposition, at 52. However, this concession did not apply to his opinion regarding the lack of identity of the plaintiffs named in the two cases, or the bringing of the two suits in two differing capacities. Richmond Deposition, at 54. Richmond did testify that prior to the appellate court ruling in *Taylor II*, he did not know of any authority holding that a second action had to include individual defendants against whom the plaintiff did not commence the first action, but could neither discount the existence of such authority. Richmond Deposition, at 52.

In regard to the federal court case, *Bywater*, Judge Kelly ruled that K.S.A. § 60–518 did not apply because the parties were different from those in *Taylor I*. Richmond stated that the Kansas Court of Appeals did not base its decision in *Taylor II* on the filing of *Bywater*. Richmond Deposition, at 81. Richmond indicated, however, that, in his opinion, *Bywater* "was Mr. Taylor's first and only opportunity to invoke the saving statute." Richmond's Expert Witness Report, at 4–5, Defendants' Memorandum in Support, Tab 19. From these facts, defendants conclude that Richmond cannot state that the filing of *Bywater* damaged plaintiff. On the other hand, plaintiff argues that the *Bywater* filing would have been an alternative basis for the Kansas Court of Appeals' judgment if it had found that *Taylor I* and *Taylor II* were similar. Both of these positions constitute arguments which are inappropriate as statements of fact.

Other than the two allegations of negligent behavior set out above, Richmond expressed no other opinions as to alternative basis for Casey's alleged violation of the standard of care. Specifically, he did not express an opinion that Casey violated the standard of care by not knowing that the Kansas courts would apply a one-year statute of limitations to plaintiff's tortious interference claim. Richmond in fact stated that, at the time of filing, plaintiff's tortious interference claim would have appeared to be governed by the two-year statute of limitations. Richmond further stated that if the Court of Appeals had not applied the one-year statute of limitations to plaintiff's tortious interference claim, then plaintiff would have recovered regardless of the application of the saving statute. However, in a seemingly opposite statement, Richmond testified that informed lawyers could not entertain reasonable doubt as to whether the one-year or two-year limitations period applied to plaintiff's tortious interference claim. Richmond Deposition, at 89.

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the non-moving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis and Conclusion

The Kansas Supreme Court further discusses the summary judgment standard in the specific context of alleged legal malpractice in the case of *Bergstrom v. Noah*, 266 Kan. 847, 974 P.2d 531 (1999). The parties advance conflicting interpretations of *Bergstrom* on the issue of whether and when summary judgment is appropriate in a legal malpractice case. In *Bergstrom*, the Kansas Supreme Court stated, "while we have held that questions of professional negligence should be left to the trier of fact, there is a recognized exception to this rule. When, under the totality of circumstances as demonstrated by the uncontroverted facts, a conclusion may be reached as a matter of law that negligence has not been established, judgment may be entered as a matter of law." *Bergstrom*, 266 Kan. at 875, 974 P.2d at 554 (citing *Phillips v. Carson*, 240 Kan. 462, 472–73, 731 P.2d 820 (1987)).

The *Bergstrom* court goes on to analyze the proposition that "an attorney is not liable for an error in judgment on points of new occurrences or doubtful construction, or for a mistaken opinion on a point of law that has not been settled by a court of last resort and on which reasonable doubt may well be entertained by informed lawyers." *Bergstrom*, 266 Kan. at 879–80, 974 P.2d at 556 (quoting 7 Am.Jur.2d, Attorneys At Law § 221). The *Bergstrom* court concludes that "[w]hile the exception for an error in judgment in legal malpractice actions is a narrow one and should not be employed where the issue is settled and can be identified through ordinary research and investigative techniques, the exception applies ..., where the law is unclear, unsettled by case law, and is an issue or issues upon which reasonable doubt may well be entertained by informed counsel." *Bergstrom*, 266 Kan. at 880, 974 P.2d at 557. In order for defendants' motion to be successful, they must prove, as a matter law, that the questions of law at issue were unsettled at the time Casey rendered his legal advice and that the questions were ones upon which informed counsel could entertain reasonable disagreement. If defendants make such a showing, then summary judgment is ap-

propriate pursuant to the error in judgment exception as applied by the Kansas courts.

Plaintiff has alleged that Casey and the Firm were negligent in three primary aspects, two of which formed the basis for the Kansas Court of Appeals' decision in *Taylor II*. The court will address each of plaintiff's allegations separately. First, plaintiff claims that Casey and the Firm were negligent in making the decision to file *Taylor II* with different parties while expecting to take advantage of the saving period provided by K.S.A. § 60–518. The Kansas Court of Appeals held, in *Taylor II*, that the inclusion of plaintiffs not included in *Taylor I* prohibited use of the saving statute by all plaintiffs. Thus, the claims of Taylor, who was a named individual plaintiff in *Taylor I*, fell prey to the statute of limitations because the saving statute did not apply to save his claims. Defendants argue that the law, prior to the Court of Appeals' decision in *Taylor II*, was unsettled as to whether the saving statute would apply to aid plaintiffs properly named in the first action even though it did not apply to plaintiffs named only in the subsequent action. Defendants further argue that reasonable and informed attorneys could disagree on this point.

K.S.A. 60–518 is a savings statute that gives a plaintiff an additional six months to bring a second action under certain conditions. *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 245 Kan. 290, 292, 777 P.2d 836 (1989). For a plaintiff to benefit from K.S.A. 60–518, he or she must have (1) commenced his first action within due time; (2) failed in his first action otherwise than upon the merits, with the failure coming after the relevant statute expired; and (3) commenced his new action within six months of the failure. *Burnett v. Perry Mfg., Inc.*, 151 F.R.D. 398, 400 (D.Kan.1993). At issue in this case is the rule that K.S.A. 60–518 has

no application where the second action "does not have the same plaintiffs as the first petition." *Rogers*, 245 Kan. at 294, 777 P.2d 836.

Defendants do not contend that *Rogers* was unclear in its ruling that an application of K.S.A. 60–518 requires the same plaintiffs in both the initial and subsequent actions. Defendants do contend, however, that *Rogers* did not answer the question of whether the statute could apply to plaintiffs properly named in the initial suit while not applying to the plaintiffs improperly added in the subsequent case. In *Rogers*, the plaintiffs initially brought suit in their individual capacities. After they dismissed the action, they attempted to refile the action, this time in both their individual and representative capacities. The court found that in order to come within the savings statute, the same plaintiff must bring both actions. *Rogers*, 245 Kan. at 293, 777 P.2d at 838. The court stated:

> Plaintiff's second petition, in which they claim as administrators of the estate of Charles Merkle, deceased, does not have the same plaintiffs as the first petition, they are suing in a different capacity. As co-administrators, they are representing the estate. Any judgment would be in favor of the estate—not the administrators as individuals. Hence, the same plaintiffs are not refiling an action within the purview of K.S.A. 60–518.

*Id.* at 294, 777 P.2d at 839. *Rogers* did not expressly address the issue of whether the plaintiffs' individual capacity claims remained within the purview of K.S.A. 60–518 despite the inclusion of representative capacity claims. Nor can it be argued that *Rogers* implicitly ruled on the issue by granting summary judgment on all plaintiffs' claims. The *Rogers* ruling set out above was purely dicta and cannot be

linked to the outcome of the case. The only rule unequivocally set out in *Rogers* is that plaintiffs suing as individuals in one action and as representatives in a second action are not within the purview of K.S.A. 60–518. The court thus concludes that *Rogers* did not settle the question of whether K.S.A. 60–518 could apply to a plaintiff named in the original action even if other plaintiffs were added and to which the saving statute could not apply.

Plaintiff also suggests that Judge Kelly's decision in *Bywater* should have instructed Casey that adding a new plaintiff in *Taylor II* would preclude use of the Kansas saving statute. In *Taylor v. Bywater*, Case No. 93–1453–PFK, 1994 WL 114293 at *1 (D.Kan. March 29, 1994), Judge Kelly stated:

> In *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 245 Kan. 290, 777 P.2d 836 (1989), the Kansas Supreme Court held that K.S.A. 60–518 did not operate to prolong the limitations period where the first action had been brought by the plaintiffs in their individual capacities and the second action had been brought by the plaintiffs in their capacity as administrators of the estate. Courts from other jurisdictions have held that any variation in the identity of the defendants will prevent the application of such savings statutes. (citations omitted).

In other words, Judge Kelly was concerned that plaintiff had brought *Taylor I* against the IUE as an entity while bringing *Bywater* against the IUE's members. Due to the lack of identity of defendants, Judge Kelly found that the saving statute could not apply. *Bywater* did not address the present question either expressly or implicitly and thus did not settle the law in this area.

The only other relevant pre-*Taylor II* case law, as relied upon by defendants, is the Tenth Circuit case of *Goldsmith v. Learjet, Inc.*, 90 F.3d 1490 (10th Cir.1996). In that case, the circuit faced a situation where the plaintiffs filed the initial action in their capacity as personal representatives and additional plaintiffs filed the subsequent action in an individual capacity. The circuit found that K.S.A. 60–518 could not apply to save the claims of the newly added individual capacity plaintiffs, but allowed the saving statute to rescue the claims of the original representative capacity plaintiffs. *Id.* at 1495. *Goldsmith* would seem to suggest that the law on the present issue was settled prior to *Taylor II*, but in defendants' favor. However, *Goldsmith* is somewhat less than persuasive on the issue because the circuit was not forced to actually address the issue. Specifically, Learjet only argued that the district court should have found the saving statute inapplicable against the plaintiffs who were suing in their individual capacities because they were not parties to the initial action. Learjet did not dispute that the saving statute should apply to the second action as it relates to the representative capacity plaintiffs who were named in the initial action. Because Learjet did not compel the circuit to address the present issue on the merits, the court concludes that *Goldsmith* did not settle the issue in defendants' favor. Having considered all of the cases which tentatively discussed this issue and finding that none directly addressed whether K.S.A. applied to initially named plaintiffs despite the inclusion of additional plaintiffs in the subsequent action, the court concludes that neither pre-*Taylor II* Kansas law nor the federal interpretation thereof settled the question.

The second prong of *Bergstrom* requires that defendants establish that reasonable and informed lawyers could have disagreed over the present issue. Plaintiff relies on the testimony of his expert, Douglas Richmond, who indicated his opinion that reasonable lawyers could not disagree on the

proper application of the Kansas saving statute in the present context. Richmond stated that, based on pre-*Taylor II* law, a reasonable attorney could not conclude that K.S.A. 60–518 would protect a plaintiff in the initial action once other plaintiffs were added in the subsequent action. Defendants rely on *Goldsmith* and a University of Kansas Law Review article by Dean and Professor Stephen McAllister and Professor William Westerbeke. The court has already noted its conclusion that *Goldsmith* was not particularly persuasive on the present issue. However, the McAllister/Westerbeke article does merit consideration. In that article, the professors discuss the Court of Appeals ruling in *Taylor II* and state:

> The court of appeals held that the refiled action was untimely and was not protected by the savings statute. The court reasoned that it was not 'substantially similar' to the original action because in the refiled action, the plaintiff's wife was added as an additional plaintiff and the four individual defendants were dropped from the action, leaving the labor union as the only defendant.
>
> The application of the 'substantially similar' standard in Taylor is not persuasive. The remedy for improperly trying to add a new plaintiff is to delete that plaintiff, not to dismiss the entire action.

William E. Westerbeke & Stephen R. McAllister, *Survey of Kansas Tort Law: Part I*, 49 U. Kan. L.Rev. 1037, 1136 (2001). Having disagreed with the Court of Appeals decision, logic would mandate that Westerbeke and McAllister necessarily believed, prior to *Taylor II*, a reasonable and informed lawyer would have thought that he or she could add plaintiffs to a second lawsuit without losing the application of the saving statute as to the plaintiffs included in the original lawsuit. Westerbeke and McAllister thus disagree with Richmond as to the conclusions a reasonable lawyer could reach on the present issue based on pre-*Taylor II* law. In this rare context, such a disagreement does not raise a question of fact. As defendants' reply states, this discussion "amount[s] to little more than debating over whether a debatable point is debatable. The simple fact of the existence of the debate is self-proving." Defendants' Reply, at 9. Because the law was unsettled and because reasonable lawyers could disagree on the issue based on pre-*Taylor II* law, the court concludes that defendants cannot, as a matter of law, be found negligent for adding additional plaintiffs in *Taylor II*.

An additional reason relied on by the Kansas Court of Appeals in *Taylor II* for finding that the saving statute did not apply was that there were five defendants in *Taylor I* and only one in *Taylor II*. The Court of Appeals thus found a lack of substantial similarities on the defendants' side of the suit as well. Defendants rely on Richmond's testimony that "reasonable doubt may well be entertained by informed lawyers as to whether or not, in order to take advantage of 60–518, the individual defendants [from *Taylor I*] needed to be named in [*Taylor II*], ..." Richmond Deposition, at 52. Plaintiffs do not dispute defendants' arguments on this point and do not brief this particular ground for decision by the Court of Appeals. Defendants cannot be found negligent for their failure to include all of the *Taylor I* defendants in *Taylor II*. The court thus concludes that defendants cannot be found negligent for failing to effectively utilize the saving statute.

Defendants next argue that the filing of *Bywater* was not, as a matter of law, legal malpractice. First, defendants assert that the filing of *Bywater* was not the cause of plaintiff's damages because the Court of Appeals did not base its ruling on the federal filing. Second, defendants contend

that the question of how many refilings a plaintiff is permitted within the saving period is an issue falling within the error in judgment exception, i.e., that the question was unsettled and reasonably informed lawyers could disagree on the issue.

■■■■ With regard to defendants' first argument, the court finds it uncontroverted that the Kansas Court of Appeals did not make the filing of *Bywater* a basis of its ruling in *Taylor II*. At issue is whether K.S.A. 60–518 may be used more than once within the initial six-month period from the initial dismissal. Plaintiff contends that Kansas law only allows for one use of the saving provision within the six-month period. Under plaintiff's interpretation, the filing of *Bywater* would have precluded the second subsequent filing of *Taylor II*. Plaintiff does not contend that the Court of Appeals based its decision, in any way, on the alleged rule that the saving statute is available only once. Instead, plaintiff's argument is as follows:

> If the Court of Appeals would have found that the two actions were similar and that [Taylor] was entitled to the protection of K.S.A. 60–518, then his claim would have nevertheless been barred because his one opportunity to refile the suit would have been expended on a meritless case filed in federal court. Therefore, summary judgment is inappropriate because this error by Casey would have cut off [Taylor]'s claim if it would have been addressed by the Court of Appeals.

Plaintiff's Response Brief, at 17. Plaintiff's argument is thus premised on the hypothetical course of action the Court of Appeals might have taken given the noted eventualities. Such a hypothetical assertion of an alleged error's impact is not sufficient to support a claim for legal malpractice. As in any negligence action, the plaintiff in a legal malpractice action must establish the four basic negligence ele-

ments. Thus, plaintiff must show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage. *Phillips v. Carson*, 240 Kan. 462, 476, 731 P.2d 820 (1987). Plaintiff's loss of the jury verdict in *Taylor II* was not causally connected to the filing of *Bywater*. Plaintiff's hypothecation about what the Court of Appeals might have done is insufficient to establish the necessary causal link between the *Bywater* filing and his loss. The court thus concludes that defendants' decision to file *Bywater* cannot, as a matter of law, form the basis of a negligence claim against them.

Even if a causal connection did exist, the court agrees with defendants that the question of whether a plaintiff can file more than one action within the original six-month savings period is unsettled and subject to reasonable disagreement. The only relevant pre-*Taylor II* Kansas case is *Denton v. Atchison*, 76 Kan. 89, 90 P. 764 (1907). In *Denton*, the Kansas Supreme Court rejected the argument that the savings statute authorizes repeated new actions within one year (now six months) after the dismissal of the preceding action. The *Denton* court was concerned that a cause of action would be kept alive indefinitely if the saving period were applied from each preceding action. That concern is not present where the subsequent filings occur within the saving period as calculated from the dismissal of the original action. In short, *Denton* merely holds that a plaintiff cannot attempt to benefit from the saving statute outside of the original six month period from the initial dismissal. It does not speak to the present situation where a plaintiff files a second subsequent action within the initial saving period.

Plaintiff's argument relies on the more recent case of *Clanton v. Estivo*, 988 P.2d 254, 26 Kan.App.2d 340 (Kan.App.1999), which interpreted the *Denton* holding. However, *Clanton's* holding is virtually identical to *Denton's* and does not answer the question of whether K.S.A. 60–518 may be used more than once within the original savings period. *Clanton* could lead to confusion in that its third headnote states in an overly broad manner that:

> A plaintiff is limited to a single use of the savings statute permitting an action to be refiled within six months if it fails for a reason other than on the merits after a statute of limitations has run; the savings statute does not allow a plaintiff unlimited dismissals and refilings to preserve a lawsuit barred by the applicable statute of limitations.

*Clanton*, supra, at syl. 3. This could lead one to erroneously conclude that the case holds that the saving statute may only be used a single time. However, *Clanton* involved a factual scenario where a third suit was filed within six months of a second suit, but not within six months of dismissal of the original suit. In such a situation, *Denton* clearly requires that the saving statute not apply to the third suit. In the present case, plaintiff filed the third suit, *Taylor II*, within six months of the dismissal of the original suit, *Taylor I*. Neither *Clanton* nor *Denton* addresses this situation. As such, the law is unsettled on the present issue.

The court further concludes that reasonable and informed lawyers may disagree on this unsettled area of law. Again, plaintiff relies on the opinion of his expert, Richmond, for the proposition that reasonable lawyers could not disagree that a plaintiff is entitled to only one use of K.S.A. 60–518. Richmond suggests that one can reach this conclusion simply by looking at the language of the statute which states that a plaintiff "may commence a **new action** within six months

. . .." K.S.A. § 60–518 (emphasis added). As with the last issue, Westerbeke and McAllister disagree with Richmond. In their article, the professors state:

> However, this second refiling [in *Clanton*] was not within the initial six-month period allowed for refiling after the first dismissal. The court of appeals held that the savings statute allows only one six-month extension within which to refile a dismissed action. **A second dismissal and refiling would have to occur within the original six-month extension in order to be timely.**

Westerbeke & McAllister, supra at 1135 (emphasis added). The court concludes that reasonable and informed lawyers can disagree on whether a plaintiff may use the saving statute more than once within the initial six-month savings period. While it is not clear that Casey made an error in judgment by filing *Bywater*, the exception denominated as an error in judgment applies and prevents, as a matter of law, a successful negligence claim on the basis of that filing.

The issues surrounding the savings statute would have been moot had the Court of Appeals not found that a one-year statute of limitations applied to plaintiff's tortious interference claim. The next issue is thus whether Casey was negligent in not recognizing that a one-year limitation period would apply to plaintiff's tortious interference claim. The Court of Appeals based its ruling in *Taylor II* on the idea that plaintiff's claim, which rested entirely on defamatory statements, was really a defamation claim dressed up in tort clothing. The court thus applied the one-year limitation period for defamation claims instead of the two-year period for tort claims.

■ At footnote six of their motion for summary judgment, defendants argue that

this alleged error falls within the error in judgment exception outlined above. The court disagrees with defendants because the court does not find, as a matter of law, that the issue was unsettled. As the Kansas Court of Appeals noted, "[t]he law is clear in Kansas that the courts will look through form to substance in determining the true nature of a cause of action." *Taylor II*, 25 Kan.App.2d at 678, 968 P.2d 685. The Court of Appeals then went on to discuss numerous situations where courts have looked past the chosen cause of action, including two cases from the District of Kansas. Plaintiff's tortious interference claim rested solely on the alleged defamatory statement in the IUE's August 3, 1992 letter. Given that fact and the above-noted general rule, the court cannot conclude, as a matter of law, that the question was unsettled or subject to reasonable disagreement. The court thus denies summary judgment based on the error in judgment exception.

Defendants next argue that the Court of Appeals' ruling on the statute of limitations issue was an intervening cause of plaintiff's injury that broke the causal link to defendants' alleged negligence. As noted in the court's findings of fact, the IUE did not raise the statute of limitations issue in regard to the tortious interference claim in the trial court. Nor was the issue designated as an issue on appeal. Nonetheless, the IUE raised the issue in their appeal brief and the Court of Appeals based its ruling, at least in part, on that issue. The court need not recite defendants' argument that the Court of Appeals, as a procedural rule, will not address issues not raised before the trial court. The existence of the rule is beyond refute and appellate courts regularly and consistently apply the procedural dictate.

Because of the Court of Appeals' alleged error, defendants argue that the damage to plaintiff was not foreseeable and that

their alleged negligence cannot be the proximate cause of that injury. In essence, defendants argue that the Court of Appeals' procedural error was a superseding cause of plaintiff's injury. In *Shideler v. Habiger*, 172 Kan. 718, 243 P.2d 211 (1952), the Kansas Supreme Court discussed proximate cause analysis:

> The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

> Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur.

*Id.* at 723, 243 P.2d at 215. First, the court concludes that Taylor's injury was the natural and probable consequence of defendants' failure to timely file the action. Failure to file within one year any action which a court may construe as a defamation suit can be reasonably expected to result in the dismissal of that claim. Next, the court finds that the question of whether the Court of Appeals' procedural error was an independent and efficient superseding cause of plaintiff's injury is a question of fact best left to the jury. As the Kansas Supreme Court notes:

> There is no precise formula for marking the line between proximate and remote consequences following a negligent act, and ordinarily the questions of negligence, including proximate cause, and whether an alleged intervening cause could have been foreseen or anticipated by the exercise of ordinary prudence and foresight, are for the jury.

*Steele v. Rapp*, 183 Kan. 371, 380, 327 P.2d 1053, 1061 (1958). The court thus rejects defendants' causation argument as a basis for summary judgment.

Finally, defendants argue that "[i]f this court finds, as a matter of law, that Casey is not liable to Taylor for professional negligence, then neither can he be liable on the same facts for breach of fiduciary duty." Defendants' Motion, at 34. To the extent the court finds that defendants were not negligent, the court agrees that the breach of fiduciary duty claims cannot stand. However, because the court did not grant summary judgment in whole, the plaintiff's breach of fiduciary duty claim survives to the extent of his negligence claim.

IT IS THEREFORE ORDERED this _____ day of January, 2002 that defendants' motion for summary judgment (dkt. no. 29) is granted in part and denied in part. Specifically, defendants' motion is granted as to plaintiff's allegations of negligence arising from defendant Casey's decision to name additional plaintiffs in *Taylor II* and his decision to file *Bywater*. Defendants' motion is denied as it pertains to Casey's failure to timely file plaintiff's tortious interference claim as a ground for negligence. Consequently, the motion is also denied on the issue of defendants' breach of fiduciary duty.